THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID SCHLOTTMAN, Defendant-Appellant.

Third District   No. 74-394

Opinion filed March 16, 1976.

Mary Robinson and Robert Agostinelli, both of State Appellate Defender's Office, of Ottawa, for appellant.

James E. Hinterlong and Russell Boothe, both of Illinois State's Attorneys Association, of Ottawa, for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, David Schlottman, appeals from his conviction for possessing not less than 10 nor more than 30 grams of cannabis in violation of section 4(c) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 704(c)). Schlottman was charged by complaint. The court conducted a hearing on defendant's motion to suppress certain evidence and denied his motion. He was found guilty at a bench trial and was sentenced to one year of probation, a one hundred dollar fine, and costs of fifteen dollars.

He raises three issues in his appeal: (1) Whether his conviction should be reversed because his motion to suppress evidence was improperly denied, the evidence being the product of an unlawful stop for questioning, (2) whether his conviction must be reversed because the record does not affirmatively show that his waiver of jury trial was made knowingly and understandingly, and (3) whether it was an abuse of the trial court's discretion to impose, as a part of defendant's sentence, a fine of one hundred dollars without first considering defendant's financial resources and future ability to pay such a fine.

In view of our disposition of the first issue raised by defendant, it is unnecessary to comment upon or decide the other issues raised.

We agree with defendant's contention that his conviction must be reversed because his motion to suppress evidence was improperly denied. On the night defendant was arrested, May 24, 1974, at about 10 p.m. two Tazewell County deputy sheriffs were dispatched to investigate a teenage drinking and "pot" party which was reported to be going on near Mackinaw Bridge. The area around the bridge is essentially rural. While proceeding to the scene the officers stopped three or four cars coming from the scene. One of the cars was stopped as far as three or four miles from the bridge. These investigative stops uncovered no evidence of crime, and no arrests resulted. The individuals stopped corroborated the report of a party going on at Mackinaw Bridge. As the officers neared the

bridge they encountered the local farmer who had called in the original complaint. He informed them that the party had been there but that he had broken it up and dispersed the participants. After examining the scene, and finding no one present, the officers drove across the bridge and proceeded down the rural gravel road for some distance. They parked their car and extinguished its lights. Their testimony indicated that after waiting for two or three minutes they observed the defendant's car proceeding slowly towards them and towards the bridge. The car was not fleeing from the scene of the party as they suspected the cars they stopped earlier were. Both officers admit they had no idea of who was in the oncoming car. They further admit that there was nothing unusual about the operation of defendant's vehicle and that they did not observe the violation of any traffic laws. The farmer had not described any particular vehicles to them. When defendant's car approached nearer the deputies turned on the lights of their squad car and pulled across the road blocking the path of defendant's car. After the stop had been completed the deputies directed the occupants to get out and produce identification. As defendant exited the car a bag of what appeared to be cannabis came into the plain view of the police.

■■ In order to determine the validity of the trial court's denial of defendant's motion to suppress the evidence seized we must decide the legality of the stop. The State has attempted to justify the legality of the stop and the resulting seizure of the contraband in plain view on the criteria established in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Under *Terry v. Ohio* and *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972), the courts have approved of authority in appropriate circumstances to infringe upon the Fourth Amendment right to privacy and will allow a properly limited search or seizure on facts that fall short of probable cause to arrest or search for contraband or evidence of crime. In both those cited cases the police investigating in the interest of self-protection had reasonable grounds to believe the suspects were armed or might be dangerous. No similar grounds existed in the present case. While we do not question the validity of the stop and frisk principle announced in *Terry v. Ohio*, or the Illinois statutory procedure for temporary questioning without arrest (Ill. Rev. Stat. 1973, ch. 38, par. 107—14), we do not believe that legal principle is applicable in the instant case. We are not faced with the typical highway roadblock situation where all cars upon a given highway are stopped for a driver's license or automobile registration check. See *City of Miami v. Aronovitz*, 114 So. 2d 784 (Fla. 1959); *Commonwealth v. Mitchel*, 355 S.W. 2d 686 (Ky. 1962).

We believe the police lacked any specific and articulable facts or inferences therefrom in this case to authorize them to stop, detain and investigate the defendant. Under the circumstances the police could not have

reasonably inferred that defendant was committing, was about to commit or had committed any crime. At most the ulterior motive of the deputies was to stop and investigate the approaching car as a possible late arrival to the already terminated teenage party. Nothing about the approaching car supported even a bare suspicion or hunch that the car contained individuals arriving late for the party or violating any law. The deputies admitted that they had no idea who was in the defendant's car until they had stopped it. With the party being over and defendant approaching, instead of fleeing the scene, it was not reasonable and the police were not justified in their stop of defendant's automobile. Neither are the present facts analogous to a typical highway roadblock situation where an area is sealed off and all traffic is stopped and investigated. No real roadblocks were set up here, the entire area was not sealed off, and only a complaint of possible criminal activity was received. The police had no reason at the time they stopped defendant's vehicle to believe any of the partygoers were in the immediate area.

We have been cited by the State to *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L.Ed. 2d 607, 95 S. Ct. 2574 (1975), as authority for upholding this particular stop. The issue there was the lawfulness of roving-patrol stops of any and all vehicles in the border area to search for illegal immigrants. The court felt there that sanctioning such stops where there was no legally recognized suspicion of illegal immigrants being present would subject citizens to potentially unlimited interference with their use of the highways. We believe the same reasoning should apply in the instant case.

■■ The defendant relies on *People v. Roberts*, 2 Ill. App. 3d 927, 274 N.E.2d 688 (1971), where a conviction was reversed because the arresting officer was not justified in his original decision to stop an automobile. We believe that the police officers here were not reasonable under these circumstances in being suspicious, merely, of occupants of defendant's vehicle. They therefore did not have reasonable grounds to stop defendant who was lawfully driving down a public road. The evidence obtained as a result of the invalid stop is also tainted and the trial court should have granted Schlottman's motion to suppress it.

Reversed.

STOUDER, P. J., and ALLOY, J., concur.