THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES W. WALTER, Defendant-Appellee.

Second District   No. 84—0357

Opinion filed May 30, 1985.

Theodore Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Andrea Becker, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John Thomas Moran, of Chicago, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After filing a certificate of the impairment, the State appeals, pursuant to Supreme Court Rule 604(a) (87 Ill. 2d R. 604(a)), from a pretrial order granting defendant's motion to suppress evidence, to wit, a 1981 Cadillac Eldorado.

Defendant, James W. Walter, was charged by information with felony theft of a 1981 Cadillac Eldorado (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)(1)), possession of component parts of a vehicle with knowledge their identification numbers had been removed (Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(4)) and improper use of registration (Ill. Rev. Stat. 1983, ch. 95½, par. 3—703). At the hearing of defendant's motion to suppress evidence, Detective Howard Parth of the Crystal Lake police department testified that on September 22, 1983, at about 5 p.m., he was in the parking lot of the Crystal Point shopping mall and observed an unoccupied late model Cadillac in the lot. The officer noted that the car, which was painted black, had peeling sections of

paint on both front fenders beneath which red paint could be seen. Officer Parth then checked the license plate number through the Secretary of State's computer and learned the license plates were in fact registered to a 1974 Chevrolet, not a 1981 Cadillac.

Officer Parth testified further that a short time later defendant and another man entered the car and drove out onto Main Street, where he stopped them for violation of the vehicle registration statute. Defendant was driving the Cadillac, and Officer Parth requested that he produce his driver's license and registration for the vehicle. The officer testified defendant did not then or at any later date present documents evidencing title, registration or ownership of the Cadillac. The officer also testified that he had attended traffic theft seminars where he was taught to look for paint peeling, paint transfers, license plates which do not match, and missing Federal registration stickers from car doors as indicia of theft; he stated all of these things were present in this case.

The State also sought through Officer Parth's testimony to introduce evidence of the ownership of the Cadillac; however, for reasons which are not clear to us, the trial court sustained defendant's objection to that inquiry as not being germane.

Defendant also testified, stating he was pulled over by an unmarked car with flashing lights and a police officer asked for his driver's license and vehicle registration. Defendant said he presented no registration documents to the officer and also that the license plates on the 1981 Cadillac he was driving were registered to a 1974 Chevrolet; defendant said he had no knowledge if there was a yellow sticker in the window evidencing transfer of the plates. Defendant also testified the officer opened the door and "ran" the VIN number of the Cadillac and thereafter handcuffed defendant.

The trial court granted defendant's motion to suppress, finding that the arrest was based on mere suspicion, as a police officer may not stop an automobile for improper license plate registration and defendant had violated no other traffic laws.

The State contends that the initial stop of defendant's vehicle by the officer was lawful and probable cause thereafter existed to arrest defendant and seize the vehicle. Defendant argues that, at the time of the stop, he was not in violation of any traffic laws regulating the safe operation of a vehicle or the safety of other persons and that the stop was thus arbitrary and unreasonable.

It is well established that an officer may make an investigatory stop of a vehicle if he "reasonably infers from the circumstances" that an offense has been committed or is about to be committed. (*Peo-*

*ple v. Patterson* (1980), 88 Ill. App. 3d 144, 145, 410 N.E.2d 223; Ill. Rev. Stat. 1983, ch. 38, par. 107—14.) While probable cause is necessary to effect a lawful arrest, a police investigatory stop may be based upon less certain grounds. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Jones* (1981), 102 Ill. App. 3d 246, 248, 429 N.E.2d 1101; *People v. Ellis* (1983), 113 Ill. App. 3d 314, 317, 446 N.E.2d 1282.

Defendant offers no relevant authority in support of his argument that it is only violations of traffic laws regulating safety upon which a valid traffic stop may be premised. He cites, *e.g., Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391, and *People v. Brand* (1979), 71 Ill. App. 3d 698, 390 N.E.2d 65. In *Prouse*, however, the court was concerned with the police practice of randomly stopping vehicles for the purpose of checking driver's licenses and vehicle registrations, finding that to be an unjustified intrusion upon fourth amendment interests. (440 U.S. 648, 659, 59 L. Ed. 2d 660, 671, 99 S. Ct. 1391, 1399.) The "stop" in *Delaware v. Prouse* was without any evidence of traffic or other violations of law. In *People v. Brand* the officer stopped the vehicle because it was being driven slowly and he also could not obtain from his radio inquiry the model number of the vehicle to which the license plates were registered. Clearly, these facts provided no articulable basis for the stop to check the driver's license. The court noted in *Brand*, by way of contrast, that the officer had no knowledge that the license plates on that defendant's car were registered to any other car. 71 Ill. App. 3d 698, 700.

In the present case, it is undisputed that the officer knew the license plates on the vehicle defendant was driving were registered to another vehicle. Section 3—703 of the Illinois Vehicle Code provides it is a Class C misdemeanor for any person to display upon a vehicle registration plates not issued to that vehicle. (Ill. Rev. Stat. 1983, ch. 95½, par. 3—703.) The officer also was aware that the Cadillac had been repainted, at least in part, which he had been taught was some indication of possible theft. The officer was clearly authorized in these circumstances to stop the vehicle driven by defendant, if for no other reason than to issue a citation for the license plate offense. See *People v. Palmer* (1976), 62 Ill. 2d 261, 342 N.E.2d 353, *cert. denied* (1976), 429 U.S. 871, 50 L. Ed. 2d 151, 97 S. Ct. 185 (missing license plates); *People v. Johnson* (1979), 74 Ill. App. 3d 1037, 393 N.E.2d 40 (violation of city sticker ordinance); *People v. Ramsey* (1979), 77 Ill. App. 3d 294, 395 N.E.2d 973; and *People v. Houldridge* (1983), 117 Ill. App. 3d 1059, 454 N.E.2d 769 (expired or invalid registration of a vehicle).

The police officer here had an articulable basis to believe that an investigatory stop was justified, and, when defendant was unable to produce any registration or title to the vehicle, or to show that the license plates had been lawfully transferred to it, the officer was justified in opening the door to identify the VIN number and attempt to locate the Federal registration number. See *People v. Piper* (1981), 101 Ill. App. 3d 296, 305, 427 N.E.2d 1361.

The record provided does not inform us what the result of the "running" the VIN number was, only that the officer arrested defendant after doing so, presumably for the offenses earlier noted. In our view, the officer lawfully stopped defendant and thereafter had probable cause to arrest him; the contrary finding of the trial court is against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for trial.

Reversed and remanded.

HOPF and REINHARD, JJ., concur.