THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY W. MOFFITT, Defendant-Appellant.

Second District No. 2—84—0829

Opinion filed November 4, 1985.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Virginia M. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

On May 2, 1984, defendant, Henry W. Moffitt, was charged by information with unlawful possession of a controlled substance, unlawful use of weapons and obstructing justice. Defendant filed a motion to quash arrest and suppress evidence based on the allegation that the initial stop of his vehicle and his arrest were unlawful because the police officer who stopped him had no reasonable grounds to do so. The motion was heard and denied. Thereafter, a jury trial was held in the circuit court of Lake County, at which defendant was found guilty of all three offenses. Subsequently, defendant was sentenced to six years' imprisonment for unlawful possession of a controlled substance and one year for each of the other offenses to be served concurrently. Defendant was also fined $4,720, the street value of the cocaine involved, under the mandatory fine provision of section 5—9—1.1 of the Unified Code of Corrections. Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1.

On April 26, 1984, Officer Ronald Calandra, of the Highland Park Police, was parked in a squad car at a gas station on Route 41, just north of Route 22. At about 1:45 a.m. he saw a semi-truck and a car

drive past him on the four-lane highway, side by side, both traveling north. The car passed the truck and changed lanes without the use of a directional signal. The officer testified that at the time the car made the turn in front of the truck the car was "close." Shortly thereafter, Officer Calandra received a call over his citizen's band radio from the driver of the truck stating that the car which had passed him had cut him off and that he believed the driver to be drunk. The officer activated his emergency lights and stopped the car.

After stopping the car, defendant handed the officer a Wisconsin driver's license which gave the name of Jimmy L. Richardson. A computer check of the license and of the car's Wisconsin registration plates revealed that both were either suspended or revoked. The check also revealed that the plates were registered to another car. At that point defendant was placed under arrest and taken to the Highland Park police station. When defendant was processed, Officer Calandra inventoried various items that were taken from defendant, including $987.76 in cash.

Defendant's car was also taken to the station, where an inventory search was conducted by police officer Gerald Cameron. Cameron testified that during his search of the driver's compartment area he found a blue cloth pouch which he recognized as being a "Crown Royal" liquor pouch. Inside the pouch was a clear glass smoking device, and on the floor a small, clear glass vial was found; both contained white powder residue. In the trunk the officer found a white metal can containing a second blue pouch inside of which were two clear plastic resealable bags with a white powdery substance inside them. The can also contained a portable weighing device, rolling papers, matches and an ID card bearing the name of Henry Wayne Moffitt. It was stipulated that the residue found in the vials and smoking device was cocaine and that the two plastic bags contained a total of 47.17 grams of cocaine. Behind the driver's seat and under the passenger's seat, a .32-caliber semi-automatic hand gun was found, along with several rounds of .32-caliber ammunition.

Defendant was issued three traffic citations for improper lane usage, invalid driver's license, and invalid registration plates. These were issued in the name of Jimmy Lee Richardson. Before placing defendant in a jail cell, a final search of his clothing and body was made, revealing a Veteran's Hospital identification card in defendant's underwear bearing the name of Henry Wayne Moffitt. Upon inquiry, defendant admitted he was Henry Moffitt.

Used car dealer Tyrone Gilbert testified for the defense. He stated that on April 23, 1984, he sold defendant the car in which

defendant was apprehended on April 26. He further testified that he had bought the car from a woman that same morning. Although Gilbert stated that he gave defendant ignition and gas tank keys, he said there was no trunk key. He also testified that when he took the car out for a test drive, he saw no vials or weapons inside.

When defendant took the stand he stated, in contradiction to Officer Calandra's testimony, that he told the officer that he had no driver's license. According to defendant, the officer then looked inside the car and found the license with Richardson's name on it. Defendant claimed that the license belonged to someone who had repaired the car for him. Defendant also testified that he told the officer that the license belonged to the owner of the car. Defendant went on to state that although he had noticed the loaded magazine in his car, he had never seen the gun, the vials, weighing device, can, or cocaine before his arrest. He also testified that he did not have the key to the car's trunk and had never purchased one.

The jury found defendant guilty of all three offenses. A timely notice of appeal was filed.

Defendant asks this court to reverse his conviction and remand the case for a new trial at which all the fruits of his allegedly illegal arrest will be suppressed from evidence. Alternatively, he asks that his sentence be reduced or that the sentencing orders be vacated and his cause remanded for a new sentencing hearing. Additionally, he asks that the *mittimus* be corrected to provide that his sentence be for a term of 364 days or less.

Defendant first contends that an anonymous truck driver's speculative assessment that defendant was drunk did not constitute reasonable grounds for the initial investigative stop by Officer Calandra. Consequently, he claims that both his arrest and the subsequent search of his car were unlawful and that all of the evidence thereby obtained should have been suppressed.

The standards governing investigatory stops by a police officer are set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879-80. A police officer in appropriate circumstances and in an appropriate manner may approach an individual for purposes of investigating possible criminal behavior even though there is no probable cause to arrest, provided that the officer's decision is based on specific and articulable facts which, when combined with rational inferences from those facts, reasonably warrant an investigative intrusion. (*People v. Vena* (1984), 122 Ill. App. 3d 154, 160, 460 N.E.2d 886.) While probable cause is necessary to effect

tain grounds. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Walter* (1985), 133 Ill. App. 3d 550, 479 N.E.2d 12; *People v. Jones* (1981), 102 Ill. App. 3d 246, 429 N.E.2d 1101.) In determining whether a stop is reasonable, an objective standard is used, namely, whether the facts available to the officer warrant a person of reasonable caution to believe that the action taken was appropriate. (*People v. Vena* (1984), 122 Ill. App. 3d 154, 160, 460 N.E.2d 886; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 671, 424 N.E.2d 688.) A mere suspicion or hunch, however, is not sufficient. (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 671, 424 N.E.2d 688; *People v. Grice* (1980), 87 Ill. App. 3d 718, 723, 410 N.E.2d 209.) Because there are no conclusive rules for determining whether an investigatory stop is justified, each case must be adjudicated on its particular facts. *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 299, 432 N.E.2d 954.

On the basis of the particular facts of the present case, we believe that the officer's stop of defendant's car was reasonable and appropriate. The truck driver spoke directly to the officer concerning a vehicle and incident that both had directly witnessed. The identity of the trucker in such a situation was inconsequential. The officer saw a car pass the truck closely without using directional signals. Although the officer testified that this fact alone did not indicate to him that a stop of the car was warranted, the message transmitted by the trucker certainly provided a reason for a person of reasonable caution to verify the possibility that the driver of the car was in fact intoxicated and a threat to his own safety as well as to that of other persons on the highway. In fact, the trial court was of the opinion that under such conditions the officer was not only justified, but obligated to make such an inquiry. In contrast to the circumstances in both *People v. Moraca* (1984), 124 Ill. App. 3d 561, 464 N.E.2d 312, and *People v. Schlottman* (1976), 37 Ill. App. 3d 62, 344 N.E.2d 8, cited by defendant, the police officer in the present case spoke directly to the informant about an incident the officer had himself just observed. His own observation coupled with the trucker's communication provided more than a "bare suspicion" or "hunch" that defendant was in violation of the law.

Although defendant notes that citizens have the right to tra-

defendant was apprehended on April 26. He further testified that he had bought the car from a woman that same morning. Although Gilbert stated that he gave defendant ignition and gas tank keys, he said there was no trunk key. He also testified that when he took the car out for a test drive, he saw no vials or weapons inside.

When defendant took the stand he stated, in contradiction to Officer Calandra's testimony, that he told the officer that he had no driver's license. According to defendant, the officer then looked inside the car and found the license with Richardson's name on it. Defendant claimed that the license belonged to someone who had repaired the car for him. Defendant also testified that he told the officer that the license belonged to the owner of the car. Defendant went on to state that although he had noticed the loaded magazine in his car, he had never seen the gun, the vials, weighing device, can, or cocaine before his arrest. He also testified that he did not have the key to the car's trunk and had never purchased one.

The jury found defendant guilty of all three offenses. A timely notice of appeal was filed.

Defendant asks this court to reverse his conviction and remand the case for a new trial at which all the fruits of his allegedly illegal arrest will be suppressed from evidence. Alternatively, he asks that his sentence be reduced or that the sentencing orders be vacated and his cause remanded for a new sentencing hearing. Additionally, he asks that the *mittimus* be corrected to provide that his sentence be for a term of 364 days or less.

Defendant first contends that an anonymous truck driver's speculative assessment that defendant was drunk did not constitute reasonable grounds for the initial investigative stop by Officer Calandra. Consequently, he claims that both his arrest and the subsequent search of his car were unlawful and that all of the evidence thereby obtained should have been suppressed.

The standards governing investigatory stops by a police officer are set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879-80. A police officer in appropriate circumstances and in an appropriate manner may approach an individual for purposes of investigating possible criminal behavior even though there is no probable cause to arrest, provided that the officer's decision is based on specific and articulable facts which, when combined with rational inferences from those facts, reasonably warrant an investigative intrusion. (*People v. Vena* (1984), 122 Ill. App. 3d 154, 160, 460 N.E.2d 886.) While probable cause is necessary to effect a lawful arrest, a police investigatory stop may be made on less cer-

tain grounds. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Walter* (1985), 133 Ill. App. 3d 550, 479 N.E.2d 12; *People v. Jones* (1981), 102 Ill. App. 3d 246, 429 N.E.2d 1101.) In determining whether a stop is reasonable, an objective standard is used, namely, whether the facts available to the officer warrant a person of reasonable caution to believe that the action taken was appropriate. (*People v. Vena* (1984), 122 Ill. App. 3d 154, 160, 460 N.E.2d 886; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 671, 424 N.E.2d 688.) A mere suspicion or hunch, however, is not sufficient. (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 671, 424 N.E.2d 688; *People v. Grice* (1980), 87 Ill. App. 3d 718, 723, 410 N.E.2d 209.) Because there are no conclusive rules for determining whether an investigatory stop is justified, each case must be adjudicated on its particular facts. *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 299, 432 N.E.2d 954.

On the basis of the particular facts of the present case, we believe that the officer's stop of defendant's car was reasonable and appropriate. The truck driver spoke directly to the officer concerning a vehicle and incident that both had directly witnessed. The identity of the trucker in such a situation was inconsequential. The officer saw a car pass the truck closely without using directional signals. Although the officer testified that this fact alone did not indicate to him that a stop of the car was warranted, the message transmitted by the trucker certainly provided a reason for a person of reasonable caution to verify the possibility that the driver of the car was in fact intoxicated and a threat to his own safety as well as to that of other persons on the highway. In fact, the trial court was of the opinion that under such conditions the officer was not only justified, but obligated to make such an inquiry. In contrast to the circumstances in both *People v. Moraca* (1984), 124 Ill. App. 3d 561, 464 N.E.2d 312, and *People v. Schlottman* (1976), 37 Ill. App. 3d 62, 344 N.E.2d 8, cited by defendant, the police officer in the present case spoke directly to the informant about an incident the officer had himself just observed. His own observation coupled with the trucker's communication provided more than a "bare suspicion" or "hunch" that defendant was in violation of the law.

■■ Although defendant notes that citizens have the right to travel highways free from unreasonable seizures, they also have the right to expect law enforcement officers to take whatever action is necessary to assure the safety of the highways which in this case warranted the investigation of a possible safety hazard, apart from its criminal aspect. Although defendant contends that Officer Calandra could have responded to the trucker's call by merely following defend-

events surrounding the occurrence in question. As stated earlier, a consideration of defendant's truthfulness is clearly a proper factor in sentencing. Although a reviewing court has the power to reduce punishment, in exercising that power a reviewing court should consider the superior opportunity of the trial judge during trial and at the sentencing hearing to acquire information about the defendant which would be helpful in determining suitable punishment. (*People v. Butler* (1976), 64 Ill. 2d 485, 490, 356 N.E.2d 330; *People v. Jones* (1985), 134 Ill. App. 3d 1048, 1053, 481 N.E.2d 726.) In the instant case we find no fault with the trial court's sentencing decision.

Defendant also argues that his sentences were not proportionate to the seriousness of the offenses. Certainly the nature and circumstances of the offense as well as the history and character of the defendant should be governing factors in imposing sentencing. (*People v. Gibbs* (1977), 49 Ill. App. 3d 644, 649, 364 N.E.2d 491.) In this respect the record shows that the court stated that it was appalled by the amount of cocaine involved. The amount of a controlled substance is relevant to the seriousness of the offense (see *People v. Rege* (1976), 64 Ill. 2d 473, 483, 356 N.E.2d 537; *People v. Jones* (1979), 75 Ill. App. 3d 214, 229-30, 393 N.E.2d 1132, *cert. denied* (1980), 445 U.S. 968, 64 L. Ed. 2d 246, 100 S. Ct. 1662), and the 47.17 grams of cocaine found in defendant's possession was quite in excess of the statutory 30-gram amount deemed by the legislature as serious enough to constitute a Class 1 felony. Considering the above-mentioned factors, we find that the six-year sentence imposed was not an abuse of the court's discretion.

We note that the State concedes that defendant is correct in contending that his sentence of one year for unlawful use of weapons is one day too long and that the *mittimus* issued in this case should be corrected to reflect the term of 364 days. We are in agreement.

Defendant next asserts that the requisite of the Unified Code of Corrections requiring imposition of a mandatory fine upon certain drug offenders (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1) has impliedly been repealed by later-enacted provisions of the Cannabis Control Act and the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, pars. 710.1, 1411.1). Section 5—9—1.1 became effective on January 1, 1982, and provides for the mandatory imposition of a fine upon individuals convicted of certain drug-related offenses. The statute requires that, "in addition to any other penalty imposed, a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized." Several opinions have remarked upon the mandatory nature of this statute. See *People*

*v. Harmison* (1985), 108 Ill. 2d 197; *People v. Bergman* (1984), 121 Ill. App. 3d 100, 458 N.E.2d 1370; *People v. Ruff* (1983), 115 Ill. App. 3d 691, 450 N.E.2d 1369.

In defendant's view, this mandatory fine provision was impliedly repealed by subsequent legislative action. Defendant directs the court's attention to portions of section 10.1 of the Cannabis Control Act (Ill. Rev. Stat. 1983, ch. 56½, par. 710.1) and section 411.1 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1411.1). Both of these sections became effective on January 1, 1984, and, as applicable to the instant case, are similarly phrased. Each provides that upon a plea or finding of guilty, or the imposition of supervision, "a fine may be levied in addition to any other penalty imposed by the court." Each statute contains an enumeration of factors which the court is to consider in "determining whether to impose a fine under this Section and the amount, time for payment and method of payment of any fine so imposed ***." Among these factors are the defendant's income, earning capacity and financial resources; the nature of the burden the fine will impose upon the defendant and any person dependent upon him; the full street value of the contraband seized and any profits or other proceeds derived by the defendant from his illegal conduct; and any other pertinent equitable considerations. The court is then to give primary consideration to the need to deprive the defendant of illegally obtained profits or other proceeds from the offense. (Ill. Rev. Stat. 1983, ch. 56½, pars. 710.1(b)(4), 1411.1(b)(4).) In defendant's view, these statutory provisions are so irreconcilable that they cannot be harmoniously construed and, therefore, that the latter-enacted statutes must be held to have brought about the repeal of the prior provision.

The repeal of statutory enactments by implication is not favored. (*Board of Commissioners v. County of Du Page* (1982), 107 Ill. App. 3d 409, 412, 437 N.E.2d 923, *aff'd* (1983), 96 Ill. 2d 378, 450 N.E.2d 332.) It is only where there is a clear repugnance between two acts and the provisions of both cannot be carried into effect that the later must prevail. (*People ex rel. Adamowski v. Metropolitan Sanitary District* (1958), 14 Ill. 2d 271, 283, 150 N.E.2d 361.) Any construction of two or more statutes which might lead to such a repeal should be avoided (*Decker v. University Civil Service System Merit Board* (1980), 85 Ill. App. 3d 208, 212, 406 N.E.2d 173), and even if there is an apparent inconsistency between two statutes, they will be construed insofar as possible so as to preclude an implied repeal of the earlier by the latter. (*Northwestern University v. State* (1977), 56 Ill. App. 3d 305, 309, 371 N.E.2d 1046.) A repeal by implication will not

be found unless the intent of the legislature to do so is clear. *People v. Holderfield* (1946), 393 Ill. 138, 145, 65 N.E.2d 443, *cert. denied* (1946), 328 U.S. 862, 90 L. Ed. 1632, 66 S. Ct. 1354.

The State attempts to reconcile these sentencing provisions by viewing the amendments effective in 1984 as merely amplifying the trial court's authority to adjudge a fine in excess of the amount made mandatory by the amendment, effective in 1982, to the Unified Code of Corrections. The State reaches this result by construing the operative language of sections 10.1 and 411.1 of the Cannabis Control Act and the Illinois Controlled Substances Act, respectively, as if they read "a fine in addition to any other penalty imposed, may be levied by the court." (Ill. Rev. Stat. 1983, ch. 56½, pars. 710.1, 1411.1.) The State bolsters its claim that this gloss should be applied to the amendments effective in 1984 by noting that they were enacted by the same Public Act (Pub. Act 83—778), which adopted section 5—9—1.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.2). The latter section provides for the disposition of fine revenues collected pursuant to the Code's mandatory fine provision (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1), and the State asserts it would be incongruous for the legislature simultaneously to repeal a mandatory fine statute while providing for the disposition of revenues raised pursuant to that statute.

This latter argument advanced by the State is a convincing indication that the legislature did not intend by enactment of the discretionary fine provisions of the Cannabis Control Act and Illinois Controlled Substances Act to repeal the Uniform Code of Corrections' mandatory fine provision. Notwithstanding this conclusion, these statutes are extremely difficult to reconcile. The State concedes that the discretionary fine provisions are applicable to the offenses of possession or delivery which are subject to the mandatory fine statute. Further, the mandatory fine statute does not restrict the amount of fine to the full street value of the controlled substance in question, but provides that the fine shall be not less than that amount. The State's construction also contemplates that a court which desires to sentence an accused to a fine in excess of the mandatory amount would actually adjudge two distinct fines. The first such fine would be the mandatory amount required by the Unified Code of Corrections, while any penalty in excess of the mandatory amount would be a separate fine under the Cannabis Control Act or the Illinois Controlled Substances Act.

In construing statutes, the role of the courts is to ascertain the intent of the legislature and then to give it effect, examining the entire statute for guidance. (*People v. Robinson* (1982), 89 Ill. 2d 469,

475, 433 N.E.2d 674; *Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 81, 387 N.E.2d 300.) In discharging this responsibility, the court will seek to determine the objective which the statute sought to accomplish and the evil it was desired to remedy. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341, 473 N.E.2d 1313.) While the intent of the legislature can best be determined by according statutory language its plain and ordinary meaning (*People v. Pettit* (1984), 101 Ill. 2d 309, 313, 461 N.E.2d 991), the plain-meaning rule should not prevail over all other aids to construction where a literal interpretation of the statutory language would yield a result inconsistent with other provisions which deal with the same subject and no other evidence of an intent to repeal or significantly alter those provisions can be discerned. (*People v. Alejos* (1983), 97 Ill. 2d 502, 511, 455 N.E.2d 48.) Each word, clause, or sentence of a statute must, if possible, be given some reasonable meaning. *Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 216, 447 N.E.2d 394.

The State's construction of the discretionary fine provisions is strained, but in view of the discussion set out above, we do not believe the legislature intended to repeal the mandatory fine provision of the Unified Code of Corrections. Accordingly, we conclude that enactment of section 10.1 of the Cannabis Control Act and section 411.1 of the Illinois Controlled Substances Act did not repeal by implication section 5—9—1.1 of the Unified Code of Corrections.

▮▮▮ Last, defendant contends that the requirement that a mandatory fine be assessed against all offenders who have merely possessed a controlled substance or cannabis pursuant to section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1) without delivering it is not constitutional because it is not a reasonable means for attaining a legitimate legislative purpose. According to defendant, a drug user as compared to a drug dealer has not made money as a result of involvement with illegal drugs. Therefore, the mandatory fine ·in the case of the possessor does not constitute a reasonable method of accomplishing the legislative goal of prevention of drug trafficking.

The Illinois Supreme Court has very recently considered the constitutionality of section 5—9—1.1 in *People v. Harmison* (1985), 108 Ill. 2d 197. In *Harmison* the defendant contended that the legislative purpose in establishing drug offense penalties was to punish large-scale drug traffickers more severely than the occasional petty distributor or drug user and that the mandatory fine imposed under section 5—9—1.1 failed to accomplish this purpose. The supreme court upheld

the statute's constitutionality, pointing out that since the amount of the mandatory fine was based on the street value of the drugs involved, the fine for a large-scale operator transacting a great volume of drugs would be more severe than the fine imposed upon a petty distributor. In so finding, the supreme court established that the statute did accomplish its legislative purpose, and we believe that this finding is controlling in defeating defendant's attack on the statute's failure to attain a legislative purpose.

However, defendant also claims that the statute is unconstitutional because it imposes a mandatory fine on one, in the position of the defendant, who has merely possessed the controlled substance. It is defendant's contention that the purpose of the mandatory fine provision is to deter those who would "traffic" in drugs. In *People v. Ruff* (1983), 115 Ill. App. 3d 691, 450 N.E.2d 1369, the trial court characterized the legislative intention of the provision as applying to "drug offenders" (115 Ill. App. 3d 691, 694, 450 N.E.2d 1369), and specifically referred to section 1 of the Cannabis Control Act and section 100 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, pars. 701, 1100), to which section 5—9—1.1 refers. In section 100 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1100) is set forth the legislative intent of that act. That section states that the intent is to provide a system of control over the distribution and use of controlled substances although the traffickers or profiteers are to be penalized most heavily. (Ill. Rev. Stat. 1983, ch. 56½, par. 701.) Since users are generally in possession of less drugs than traffickers and profiteers, the imposition of the graduated mandatory fine would accomplish the acknowledged intent. Moreover, as the State points out, it is the user of a controlled substance who creates the demand for such products and, thus, fining the user, as well as the traffickers, is a reasonable means of deterring the purchase, use, and abuse of such substances.

 Defendant also argues that there is no reason to assume that one who has merely possessed a drug has access to funds out of which he can pay a fine. In this regard we believe that a user who had funds to purchase the drug should be expected to have funds with which to pay the fine imposed. A mandatory fine also allows a user to know in advance what monetary penalty he will be expected to pay, rather than allow him the hope of getting off lightly, thus providing a greater deterrent effect. Additionally, statutory safeguards exist for those offenders who may lack funds to pay a fine. Other portions of the statute provide for revocation of the fine or modification of the method of payment (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—2) and

for relief due to unintentional default (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—3(c)). Furthermore, it has been held that section 5—9—1.1 contains no provisions requiring an examination into an offender's personal financial situation when imposing the mandatory fine. (*People v. Ruff* (1983), 115 Ill. App. 3d 691, 695, 450 N.E.2d 1369.) For these reasons we conclude, contrary to defendant's claim, that section 5—9—1.1 is a constitutionally permissible means of achieving the legislative purpose of deterring drug abuse.

For the reasons stated, we affirm the judgment of the circuit court of Lake County, but remand the cause with directions for preparation of an amended *mittimus* reflecting the proper sentence for unlawful use of weapons.

Affirmed in part; remanded in part with directions.

NASH, P.J., and SCHNAKE, J., concur.