THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SYLVIA BEAVERS, Defendant-Appellant.

Third District No. 3—85—0285

Opinion filed March 6, 1986.—Modified opinion filed on denial of rehearing April 17, 1986.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

792

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Howard R. Wertz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

Following a jury trial, the defendant, Sylvia T. Beavers, was convicted of three counts of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver. (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(c).) The court sentenced the defendant to a four-year term of probation and, besides ordering payment of $600 in restitution to the Metropolitan Area Narcotics Squad (MANS), imposed a $3,600 fine.

The evidence at trial established the following. The defendant and Ira Beavers divorced in October of 1983 and, commencing the following December, cohabited for three months. The defendant disapproved that Ira sold marijuana and cocaine while they were together. Despite the Beavers' friendship with the supplier, George Zaballa, Sylvia refused to acquire drugs from him.

On June 5, 1984, after being concerned about his children's welfare and environment for six months, Ira Beavers informed MANS agent, Charles Stein, Jr., that the defendant was selling drugs. Beavers had only witnessed one drug sale, but the defendant had admitted to him that she dealt drugs to pay for her house. Beavers agreed to introduce Agent Stein to the defendant as Beavers' temporary fellow employee.

The next day, according to the defendant, Beavers called and asked her to go to Zaballa's for a gram of cocaine. When she hesitated, Beavers reminded the defendant that she owed him favors, so she agreed. Although that was the first time she bought cocaine from Zaballa, he demanded no money. Later, Beavers and Agent Stein arrived at the defendant's residence as she was leaving to take her daughter to a baseball game. After the defendant returned, they went inside. The defendant and Beavers went into the bedroom. According to the defendant, when she told Beavers that she did not want cocaine in her house, he asked her to give it to Agent Stein because his drug involvement could jeopardize his job. They exited the bedroom. Beavers handed the gram of cocaine to the defendant, who delivered it to Agent Stein for $100. The defendant told Agent Stein that the cocaine had only been cut once, and agreed upon request to get him more cocaine. According to the defendant, that was the first time she sold drugs. She acknowledged that she had previously used cocaine with Beavers, Zaballa, and Brian Bolte, her boyfriend. As Agent Stein directed, Beavers had no further discussions with the defendant about

the drugs sales.

Between June 6 and June 8, the defendant agreed to sell more cocaine to Agent Stein because, even though Beavers had not threatened her with physical harm for noncompliance and their current relationship was friendly, she feared that if she refused, Beavers would physically abuse her as he had in the past. Beavers denied that he ever picked up or told the defendant to acquire drugs from Zaballa or that he told, threatened, promised or forced the defendant to sell cocaine to Agent Stein.

On June 8, Agent Stein used the phone number Beavers had supplied to call the defendant. After she acquired the cocaine from Zaballa, they met in the defendant's home. The defendant again delivered a gram of cocaine to Agent Stein for $100 and told Agent Stein that the cocaine was good quality. They then discussed a subsequent sale of one-eighth of an ounce of cocaine. The defendant told Agent Stein that Bolte was the dealer.

On June 11, Beavers called the defendant, asked her to go out with him, and threatened that if he lost his job because of the drug dealing, she would receive no child support.

On June 13, Agent Stein phoned the defendant and inquired about purchasing the one-eighth ounce. As requested, when Agent Stein called her back the next day, the defendant told him that the cocaine was available for $280 but that Bolte had not yet picked it up. To discourage Agent Stein, the defendant deliberately delayed acquiring the cocaine. However, the defendant feared that Agent Stein would inform Beavers if she refused to obtain it. Therefore, she kept dealing to avoid problems with Beavers.

On June 15, the defendant again tried to stall Agent Stein when he twice phoned her, but eventually in the hallway of her residence, outside the presence of her four children, the defendant delivered one-eighth of an ounce of cocaine for Bolte's increased price of $300. After the defendant told Agent Stein that kilos, which each weigh two pounds, were available, she agreed to get him more.

On June 20, Agent Stein called the defendant to request that she get him one gram the next day and one-eighth of an ounce on June 22. The defendant told Agent Stein that the quality would be better. On June 21, after Agent Stein called the defendant, she called Beavers to express her dissatisfaction with dealing and then called Zaballa to arrange to pick up the cocaine. When they met, Agent Stein paid the defendant $100 for two one-half gram packets of cocaine and arranged to pick up another one-eighth of an ounce the next day. Agent Stein thought that quantity represented the defendant's maximum capability

and increased the possibility that more cocaine would be present on her premises.

On June 22, according to the defendant, Beavers arranged for her to meet with Agent Stein and procured the cocaine to deliver to Agent Stein. That day, Agent Stein phoned the defendant before he went to her residence. While Agent Stein waited at her door, the defendant went to get one-eighth of an ounce of cocaine and, in the hallway, handed it to him. Then, at least eight agents appeared and in the presence of the defendant's brother and children, assisted Agent Stein with a search. The agents discovered a sifter, commonly used to cut cocaine with another substance; two bottles of anisotol powder, a common cutting agent; two one-half gram packages of cocaine; a cocaine mirror, short straw, and razor blades; and a gram scale, commonly used to weigh cocaine. According to the defendant, the cocaine and the scale were Bolte's but the sifter, the powder, and the drug paraphernalia belonged to Beavers.

According to Agent Stein, the defendant's arrest was delayed so that she would sell more cocaine, and thus increase the severity of the offense and the possibility of introducing him to her supplier. The defendant was familiar with drug weights and charged the prevailing price for each quantity. The defendant explained that Beavers taught her those drug terms and prices, but denied ever phoning Agent Stein or asking him not to tell Beavers that they were dealing. The defendant further explained that she told Agent Stein that Bolte was supplying the drugs because she did not want to jeopardize Beavers' job.

Between June 6 and June 22, the defendant once spoke with Beavers on the phone, and once when they met, Beavers assured her that he would do nothing to cause her trouble. The defendant denied that she told MANS Agent Dwayne Davis that after acquiring the cocaine from Zaballa, she cut it with anisotol powder, packaged it, used some, and sold the balance for $50 more than the purchase price. In fact, the defendant denied selling cocaine to anyone besides Agent Stein. Finally, the defendant told the jury that Beavers had alleged in his petition for change of custody that she was a drug dealer.

The defendant initially argues that the State failed to prove her guilty beyond a reasonable doubt by not rebutting her affirmative entrapment defense. The defendant suggests that instead of being predisposed to commit the offense, she, out of fear, submitted to Beavers active encouragement, which Beavers then used as grounds for his anticipated custody modification petition. The defendant also relies upon her past good conduct.

■ Entrapment exists when, to obtain evidence, the government

originates the crime and induces the innocent defendant to commit it. The defendant's predisposition and the government's involvement are properly considered by the jury (*People v. Johnson* (1984), 123 Ill. App. 3d 363, 462 N.E.2d 948) in determining whether the State proved beyond a reasonable doubt that the defendant was not entrapped. *People v. Fisher* (1979), 74 Ill. App. 3d 330, 392 N.E.2d 975.

■ Neither the defendant's history nor her claimed fear and reluctance to deal drugs controls the resolution of the defendant's predisposition. (*People v. Bean* (1978), 63 Ill. App. 3d 264, 379 N.E.2d 723.) More important considerations include whether the defendant engaged in a course of conduct involving similar offenses (*People v. Dempsey* (1980), 82 Ill. App. 3d 699, 402 N.E.2d 924), and whether the defendant had ready access to a drug supply. *People v. McSmith* (1961), 23 Ill. 2d 87, 178 N.E.2d 641.

Despite Beavers' ulterior motives and participation, the defendant's past good conduct, and her fear and reluctance to deal drugs, the defendant delivered cocaine to Agent Stein three times within two weeks. The fourth deal was thwarted by her arrest. The defendant frequently used cocaine, was able to promptly acquire the requested quantities, was familiar with drug terminology and prices, and housed the equipment associated with cocaine use in her home. Finally, the defendant misrepresented the identity of the real dealer.

■ The jury assessed the weight, credibility and reasonableness of all the testimony. This court may not disturb those findings to reverse a conviction unless the evidence is so improbable as to raise reasonable doubt of the defendant's guilt. (*People v. Dempsey* (1980), 82 Ill. App. 3d 699, 402 N.E.2d 924.) Thus, we find the evidence sufficient to establish that the defendant was not entrapped.

■ The defendant next attacks the propriety of her fine. First, the defendant argues that section 5—9—1.1 of the Uniform Code of Corrections, requiring imposition of a mandatory fine upon certain drug offenders (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1), was impliedly repealed by the subsequently enacted sections 10.1 and 411.1 of the Cannabis Control Act and the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, pars. 710.1 and 1411.1).

The Illinois Appellate Court decision in *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 485 N.E.2d 513, is dispositive of that aspect of the issue at bar. Therein, the court held that the legislature did not impliedly repeal the mandatory fine provision of section 5—9—1.1 by enacting the discretionary fine provisions of the Cannabis Control Act and the Illinois Controlled Substances Act.

■ Secondly, the defendant contends that the mandatory fine pro-

vision is unconstitutional because it not only ignores her financial circumstances and her rehabilitative potential but also violates the doctrine of separation of powers. The statute constitutionally accomplished its legislative purpose to prevent drug trafficking and does not violate the doctrine of separation of powers (*People v. Harmison* (1985), 108 Ill. 2d 197, 483 N.E.2d 508), even though it contains no provisions requiring examination of the offender's personal financial situation. *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 485 N.E.2d 513.

■ Thirdly, the defendant contends that the court improperly based her fine on the erroneous street value of the cocaine. At the sentencing hearing, Agent Stein testified that cumulatively on June 6, June 8, June 15, and June 21, he paid the defendant $600 for approximately six grams of cocaine. In addition, on June 22, Agent Stein did not pay for the approximately three grams of cocaine the defendant possessed. Agent Stein opined that based on the Illinois Department of Law Enforcement statistics, the street value of cocaine is $400 per gram, but admitted that he had never paid more than $100 per gram.

The court ruled that "the street value from the testimony of law enforcement personnel is that street value is $400 per gram. I don't have any evidence to the contrary. And accordingly, I think that the fine that has to be imposed is a fine of $3,600."

The present trial court was provided with the street value through the testimony of Agent Stein. As the court pointed out in *People v. Dale* (1985), 137 Ill. App. 3d 101, 484 N.E.2d 459, street value is the price in a sale between a willing seller and a willing buyer in the streets based on testimony by law enforcement personnel and the defendant. We believe the evidence showed the street value to be $100, the price paid by Agent Stein to defendant. Additionally, the court fined defendant for the sale of nine grams. However, she was only convicted of selling eight grams. Thus, the proper fine to be imposed should have been $800. Therefore, pursuant to our powers under Supreme Court Rule 615(b)(4) (87 Ill. 2d 615(b)(4)), we hereby reduce the fine entered in this case to $800.

■ Fourthly, the defendant requests that she be allowed a $10 credit against her fine for two days of incarceration. The State suggests that a $5 credit is appropriate.

The defendant was incarcerated on June 22 and June 23. Based on *People v. Winkler* (1979), 77 Ill. App. 3d 35, 395 N.E.2d 671, we order a $10 credit against the recomputed fine.

■ Finally, the defendant argues that the court exceeded its statutory authority in ordering her to pay restitution to MANS, which was

neither the victim nor the complainant involved in the offenses. The State responds that the defendant waived consideration of the issue on appeal by inviting the court to enter a $600 restitution order. We agree.

At the sentencing hearing, the defendant's counsel stated that the defendant agreed that Agent Stein paid her $600 and then requested that she be ordered to pay restitution in that amount.

We acknowledge, as this court did in *People v. Evans* (1984), 122 Ill. App. 3d 733, 461 N.E.2d 634, that a government entity investigating drug crimes is not a "victim" to the extent that public monies are expended. We further acknowledge that to prevent a drug offender from profiting from his criminal conduct, alternatives other than restitution are available to the State. However, we cannot al' w the defendant to complain of an error in which he acquiesced or invited. *People v. Benka* (1983), 117 Ill. App. 3d 221, 453 N.E.2d 71.

In the instant case, the defendant did not simply fail to object to the court's order. Instead, she invited the court to enter the order which on appeal she claims was erroneous. Accordingly, the defendant has waived consideration of the issue on appeal.

Accordingly, the fine imposed by the circuit court of Will County is modified. The case is hereby affirmed as modified.

Affirmed as modified.

HEIPLE, P.J., and BARRY, J., concur.