THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MIGUEL CARRASQUILLA, Defendant-Appellant.

First District (1st Division)   No. 86—1292

Opinion filed March 8, 1988.

Robert C. Lucenti, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James Sullivan, and Lynda A. Peters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Miguel Carrasquilla, appeals a conviction for possession of a controlled substance with intent to deliver and the imposition of a fine in the amount of $22,500. The following issues are raised on appeal: (1) whether the trial court erred in assessing a fine against defendant in the amount of $22,500 where the fine was satisfied by the seizure of a bail deposit paid by defendant's family and defendant lacked financial resources to pay the fine; (2) whether the State failed to prove defendant guilty beyond a reasonable doubt; (3) whether certain remarks and conduct of the trial court directed toward defendant and his counsel constituted reversible error; and (4) whether section 5—9—1.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1), establishing a fine based on "street value" of drugs, is unconstitutionally vague.

At trial, Officer Richard Lopardo testified that on June 25, 1985, he placed the building located at 830 North California Avenue under surveillance between 8 and 9 p.m. He was accompanied by four other officers. At about 11:55 p.m., he executed a search warrant for the second-floor apartment in the building. Defendant opened the door. His wife, Gladys Carrasquilla, was present along with their three children. After conducting a search, Officer Lopardo seized three bags of cocaine which were discovered in a suitcase in the rear bedroom closet of the apartment. After discovering the bags and field testing the substance, the officer continued the search and found two additional bags of cocaine in a kitchen cabinet. The combined weight of the cocaine totalled 3,888.61 grams.

The defendant testified that on June 25, 1985, he left his home between 3 and 3:30 in the afternoon to drive his sister-in-law to the corner of California and Division, where she made a phone call. Defendant admitted that he had a phone in his apartment. After she made the phone call, he drove her home and then drove to Arlington Heights, where he delivered a station wagon he had repaired. He testified that he arrived in Arlington Heights at 4:30 p.m. He and the owner of the station wagon then went to a liquor store where they purchased some alcohol. While at the liquor store, defendant saw a friend, Juan Garibay. Defendant returned to his home between 11 and 11:30 p.m. He stated that he did not know there were narcotics in the apartment.

Defendant's wife corroborated his testimony with respect to the time he left the apartment and the time he returned. She testified that at 6 p.m. that night, a man named Armando Lizbaro came over and asked to leave a suitcase in the apartment. She stated that his request was not unusual and that she put the suitcase in her bedroom so that it would not be in the way of the children.

Defendant was found guilty. At the sentencing hearing, the State indicated that the value of the cocaine was approximately $400,000. The trial court fined defendant $22,500, which was to be taken from the bail deposit. Defense counsel objected as the bond was not defendant's money but money provided by members of defendant's family.

Defense counsel introduced a motion to reduce the fine and maintained that the court had failed to hold a hearing to determine defendant's financial resources as required by section 5—9—1 (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1). The trial judge stated that the bond originally had been $2,500,000 until he reduced it to $22,500. The court then held a hearing to determine defendant's ability to pay the fine. At the hearing, Officer Claude Posilovich testified for the State regarding the street value of the cocaine. He stated that one gram of cocaine sells for $100 to $110. On that basis he estimated the value of the cocaine in issue here to be approximately $400,000. Following testimony of defendant and his parents regarding the source of the bond money, the trial court affirmed the $22,500 fine. Defendant now appeals.

Defendant's first contention is that the trial court improperly imposed the $22,500 fine under section 5—9—1 (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1). That section provides in pertinent part:
"Sec. 5—9—1. Authorized fines.
(a) An offender may be sentenced to pay a fine which shall not exceed for each offense:
(1) for a felony, $10,000 or the amount specified in the offense, whichever is greater;
* * *
(b) A fine may be imposed in addition to a sentence of conditional discharge, probation, periodic imprisonment, or imprisonment.
* * *
(d) In determining the amount and method of payment of a fine, the court shall consider:
(1) the financial resources and future ability of the offender to pay the fine; and
(2) whether the fine will prevent the offender from mak-

ing court ordered restitution or reparation to the victim of the offense." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.) Defendant maintains that the fine was improper as the trial court failed to consider his financial resources; the evidence shows he lacks the ability to pay any fines levied; the procedural hearing held after the fine was assessed was a sham; and the bail deposit was improperly seized as the monies belonged to family members.

The State maintains that the defendant was fined not under section 5—9—1, but under section 5—9—1.1 (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1) and that the fine imposed should have reflected the estimated street value of $400,000 rather than the lesser amount of $22,500. Section 5—9—1.1 provides for a mandatory fine in drug-related offenses as follows:

"When a person has been adjudged guilty of a drug related offense involving possession or delivery of cannabis or possession or delivery of a controlled substance as defined in the Cannabis Control Act, as amended, or the Illinois Controlled Substances Act, as amended, in addition to any other penalty imposed, *a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized.*

'Street value' shall be determined by the court on the basis of testimony of law enforcement personnel and the defendant as to the amount seized and such testimony as may be required by the court as to the current street value of the cannabis or controlled substance seized." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1.)

The legislative history of section 5—9—1.1 indicates that the mandatory fine was designed to prevent drug trafficking and to act as a deterrent, as the accused would know in advance the possible monetary penalty that would be imposed. See *People v. Harmison* (1985), 108 Ill. 2d 197, 204-06, 483 N.E.2d 508; *People v. Moffit* (1985), 138 Ill. App. 3d 106, 118-19, 485 N.E.2d 513, *appeal denied* (1986), 111 Ill. 2d 576.

After the hearing on defendant's motion to reduce the original $22,500 fine, the trial court stated that it had "not impose[d] a street value fine at the time of sentencing." The court then sustained the $22,500 fine to stand as both a street value fine and an "original" fine. On the record here, it is not clear which section of the statute was used as the basis for imposing the fine; however, as section 5—9—1.1 provides for street value fines "in addition to any other penalty imposed," it appears that defendant could have been fined under both sections 5—9—1 and 5—9—1.1.

■ If the $22,500 fine was imposed under section 5—9—1, the trial court was required to hold a hearing on defendant's ability to pay prior to imposing the fine. Even if the fine was imposed under section 5—9—1, however, the mandatory street value fine under section 5—9—1.1 must still be imposed. Because of the purposes for which section 5—9—1.1 was enacted, defendant's ability to pay any street value fine imposed under that section is irrelevant. See *People v. Ruff* (1983), 115 Ill. App. 3d 691, 695, 450 N.E.2d 1369.

We are not persuaded by the State's argument that pursuant to *People v. Ruff* (1983), 115 Ill. App. 3d 691, 450 N.E.2d 1369, this court should correct the trial court's omission and impose a fine of $400,000. In *People v. Ruff*, the appellate court held that the trial court erred when it imposed a fine in an amount less than the full street value of the controlled substance seized. The court stated that although a trial court may revoke a fine or unpaid portion of a fine already imposed under a statute, it may not reduce a mandatory fine not yet levied. The appellate court found that the trial court had erred in imposing a fine of $500 rather than the $7,718 street value of the drugs seized, but affirmed the $500 fine as the State had failed to contest the issue of the amount of the fine. While the case before us is distinguishable in that the State requested the imposition of a street value fine both at trial and on appeal, we do not believe that the record reflects adequate evidence of the actual street value of the drug.

Officer Posilovich testified that the usual and customary cost for the purchase of a gram of cocaine was $100, and based on the weight of the contraband seized, estimated a total street value of approximately $400,000. The record indicated that he had not examined the drugs seized from the defendant here. Although the officer testified that his calculations were based on the cocaine having a minimum purity level of 25%, on cross-examination he admitted that he had no knowledge of the purity level of the drug seized and that the laboratory report failed to indicate a percentage of purity.

●■ ■ The statutory mandate is that " 'street value' shall be determined by the court on the basis of testimony of law enforcement personnel and the defendant as to the amount seized and such testimony as may be required by the court as to the current value *of the \*\*\* controlled substance seized.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1.) The language of the statute indicates that the testimony as to street value must relate to the actual substance seized. We believe that in the absence of some evidence establishing the purity of the substance, the officer's opinion, standing

alone, is insufficient to establish the street value of the drug. Although our courts have tended to accept the opinion testimony of narcotics officers regarding the street value of drugs, the opinion testimony has been found relevant because it was offered in conjunction with evidence of the purity of the particular contraband in issue. (See, e.g., People v. Pilcher (1986), 147 Ill. App. 3d 193, 194, 497 N.E.2d 1360; People v. Roundtree (1985), 135 Ill. App. 3d 1075, 1082, 482 N.E.2d 693), or because it was based on the actual price paid in a transaction between a buyer and seller. (See, e.g., People v. Beavers (1986), 141 Ill. App. 3d 790, 792-93, 491 N.E.2d 438, appeal denied (1986), 112 Ill. 2d 581; People v. Dale (1985), 137 Ill. App. 3d 101, 103, 434 N.E.2d 459.) In the absence of an adequate laboratory analysis of the confiscated drug or evidence of an actual cash sale, we believe that the imposition of a fine based solely on the opinion of a narcotics agent here was improper. Accordingly, we remand this case to the trial court for a hearing to determine whether the trial court intended to sentence the defendant here solely under section 5—9—1.1 or under both sections 5—9—1.1 and 5—5—1, and to determine the "street value" of the actual drug seized.

We next consider defendant's claim that it was improper for the trial court to seize the bond in satisfaction of the fine as the money for the bond was not defendant's but had been contributed by family members.

■ The right to apply cash bail to the payment of fines depends generally upon statutes. (See Annot., 92 A.L.R.2d 1084, 1085 (1963).) Under Illinois law, bail posted under the 10% deposit provision (Ill. Rev. Stat. 1985, ch. 38, par. 110—7) is conclusively presumed to be posted by the defendant and can be used to pay fines despite third-party claims on the funds. (People v. Nicholls (1977), 45 Ill. App. 2d 312, 319-20, 359 N.E.2d 1095, aff'd (1978), 71 Ill. 2d 166, 374 N.E.2d 194.) Section 110—7(h) of the statute established that the deposit of 10% of the bail serves not only to ensure defendant's presence in court at the appointed time but also constitutes a fund for the satisfaction of any fines levied against the defendant. (See People v. Nicholls (1978), 71 Ill. 2d 166, 176-77, 374 N.E.2d 194.) When a fine is imposed pursuant to section 5—9—1, once the court has held the requisite hearing to determine whether the defendant has the financial ability to pay the fine, payment of the fine can be exacted from his cash bail irrespective of whether the cash received was actually the property of the defendant. People v. Echols (1986), 146 Ill. App. 3d 965, 978, 497 N.E.2d 321; People v. Nicholls (1977), 45 Ill. App. 3d 312, 319-20, 359 N.E.2d 1095, aff'd (1978), 71 Ill. 2d 166, 374 N.E.2d 194.

■ At the hearing on the defendant's motion to reduce the fine, the trial court heard testimony regarding the defendant's present financial circumstances and his past employment as a mechanic which indicated that he had the capacity to earn approximately $500 per week. Defendant's mother also testified, stating that she had taken out various loans to pay the bail deposit. An affidavit from defendant's father was offered to show that he also had borrowed various sums from relatives and sold an automobile to provide the balance of the required bail of $22,500. At the conclusion of the hearing, the trial court reaffirmed the imposition of the fine based on the seriousness of the offense and on the court's determination that defendant had the ability to pay the fine. The trial court's imposition of the fine conformed to statutory requirements in that the court considered the presentence report and held a hearing to consider defendant's financial capacity to pay. With respect to the testimony of defendant's mother and the affidavit submitted by defendant's father, the court noted that defendant offered only the front of the checks allegedly contributed by defendant's mother but not the endorsements and that the mortgage on defendant's mother's house, which was purportedly the basis for the loan, was never made part of the record. Since there were sufficient facts available to the trial court to determine the issue of imposition of a fine and the record indicates that the trial court considered the requisite factors, we find no error in the trial court's order seizing the bond in satisfaction of the fine.

*People v. Dabbs* (1974), 24 Ill. App. 3d 252, 321 N.E.2d 185, relied on by defendant, is distinguishable. There was a preexisting judgment against the defendant in *Dabbs,* resulting from the forfeiture of a prior bail bond. An information for the violation of the bond was then filed against the defendant with bond set at $100,000. Defendant's mother offered to post the $10,000 necessary for the $100,000 bond, but attempted to get a commitment from the State's Attorney that the second bond would not be applied to the existing judgment. When the bond was posted, receipts were issued to defendant's mother and the defendant executed assignments to her of the deposits which were then filed with the clerk. The trial court conceded that defendant's mother had provided the money, but ordered the bail held to satisfy the original judgment. On appeal, the court held that the mother was entitled to receive the balance of the deposit with interest, as she had provided the funds and the terms of the bond had been satisfied. In *Dabbs,* unlike the present case, the bond was applied to a preexisting obligation of the defendant and the trial court also had made a finding that the defendant had no assets. 24 Ill. App. 3d at 255.

Defendant also contends that the State failed to prove beyond a reasonable doubt that he committed the offense of possession of a controlled substance with the intent to deliver. He claims that the elements of knowledge and control, necessary to prove him guilty under a theory of constructive possession, were not established. We disagree.

●■ ■ To sustain a conviction for possession of a controlled substance with intent to deliver under the doctrine of constructive possession, the State must establish that the defendant had knowledge of the presence of the narcotic and that the narcotic was within his immediate and exclusive control. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939; *People v. Stamps* (1982), 108 Ill. App. 3d 280, 291, 438 N.E.2d 1282, *appeal denied* (1982), 91 Ill. 2d 564.) As direct proof of knowledge is rarely available, this factor may be shown by evidence of facts, declarations or conduct which reasonably imply that the accused knew of the existence of the narcotics at the place where they were found. (*Stamps*, 108 Ill. App. 3d at 292.) If it is proved that the defendant controlled the premises, an inference of both knowledge and possession arises which may sustain a guilty verdict. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-09, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939.) Whether there was possession is a question to be determined by the trier of fact, and its findings will not be disturbed on review unless the evidence is so contrary to the verdict or so unreasonable that it raises a doubt as to a defendant's guilt. (*People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 380, *cert. denied* (1964), 376 U.S. 910, 11 L. Ed. 2d 608, 84 S. Ct. 665.) We conclude that on the facts presented here, the trier of fact could have found that the defendant had knowledge of the presence of the drugs and that the drugs were in his control.

■ Testimony in the instant case shows that the defendant had the requisite control over the apartment from which the trial court could infer knowledge and possession. The defendant was in the apartment at the time the cocaine was seized and he testified that he lived there along with his wife and three children. Utility bills which were stipulated to also show that defendant controlled the premises.

The defendant's reliance on *People v. Binns* (1975), 27 Ill. App. 3d 978, 327 N.E.2d 369, *appeal denied* (1975), 60 Ill. 2d 598, to support the argument that constructive possession was not proven beyond a reasonable doubt is misplaced. The defendant in *Binns* was found guilty of unlawful possession after a search of her apartment produced nine manila envelopes containing marijuana. The defendant tes-

tified that she had just returned to her apartment after an absence of several nights and that other people had been staying in the apartment. A defense witness also testified that he had planted the drugs in the defendant's apartment and then informed the police. The appellate court in *Binns* reversed the conviction based on the informant's testimony and on evidence in the record showing that the manila envelopes had not been opened and the contents were not visible. This is factually distinguishable from the instant case, in which there is no evidence suggesting that the cocaine was planted nor was there any explanation of the two plastic bags of cocaine discovered in the kitchen.

■ Intent to deliver also can be inferred based on the amount of cocaine seized. The combined weight of the cocaine found in the brief case and the kitchen cabinet totalled 3,888.61 grams, an amount far in excess of what reasonably would be intended for personal use. The evidence here was neither palpably contrary to the verdict nor so unsatisfactory as to create a reasonable doubt of guilt. We believe the defendant was proved guilty beyond a reasonable doubt.

Defendant next contends that the trial court's conduct was hostile and prejudicial toward both himself and defense counsel, resulting in a tainted proceeding which requires reversal. This assertion is based on the court's statements when the guilty verdict was rendered that the defense "was riddled with inconsistencies" and that the court was not required to make findings of fact in this case. Defendant also cites a statement by the court that the court had "a bias towards Mr. Carrasquilla, a bias which arose because of the evidence against him" and various other statements purportedly made off the record.

●■ Reversible error is committed only where it is shown that the judge has made prejudicial statements and defendant can show that he has been harmed by the remarks of the judge. (*People v. Wells* (1982), 106 Ill. App. 3d 1077, 1086, 436 N.E.2d 688.) Where the comments by the court do not constitute a material factor in defendant's conviction or do not prejudice the defendant, the verdict will not be disturbed. (*People v. Nurse* (1975), 34 Ill. App. 3d 42, 339 N.E.2d 328.) After reviewing the record, we conclude that the trial court properly considered the evidence before finding the defendant guilty and that the comments made by the court did not constitute reversible error.

●■ The court's comment indicating a "bias towards Mr. Carrasquilla," made after the guilty verdict was entered, was followed by the explanation that the bias was based on the fact that he considered defendant to be "a major dope peddler." Such a statement following a

guilty verdict does not constitute grounds for reversal. See *People v. Edmondson* (1982), 106 Ill. App. 3d 716, 725, 435 N.E.2d 870, *appeal denied* (1982), 91 Ill. 2d 574.

Defendant also contends that the trial court's hostility was reflected by his seizing the bond as a fine.

The trial court stated at the end of the trial that a substantial fine would be imposed on the defendant and asked defense counsel if any professional liens were being asserted. Defense counsel stated that there were none and the court then proceeded to impose the fine. Defense counsel then made certain statements inferring that the trial court was biased against him.

●■ We do not find that the trial court's response was indicative of hostility or prejudice toward defense counsel. The trial court's comments in response admonished defense counsel for his attitude toward the court and his failure to protect his interest through a lien. The court's comments did not constitute a material factor in defendant's conviction in any event, and therefore do not constitute reversible error.

●■ Defendant's final contention is that the method of calculating a street value fine under section 5—9—1.1 (Ill. Rev. Stat. 1985, ch. 38, par. 1005—9—1.1) is unconstitutionally vague. He points out that the officer who testified as to the street value of the drugs confiscated assumed that the contraband would be sold in one-gram packets and that a purity level of at least 25% was necessary to yield one-gram packets. Defendant maintains that the officer's ultimate valuation of $400,000 was arbitrary and capricious as the laboratory report failed to show the purity of the drug and there was no basis to support the officer's assumption that the drug would be sold in one-gram packets.

A similar challenge to the constitutionality of section 5—9—1.1 was made in *People v. Dale* (1985), 137 Ill. App. 3d 101, 484 N.E.2d 459, *aff'd* (1986), 112 Ill. 2d 460. The court in *Dale* found that the use of the term "street value" was not unconstitutionally vague, noting that a sentencing provision is vague only if an ordinary person reading it cannot understand the consequences of violating a criminal statute. (Citing *United States v. Batchelder* (1979), 442 U.S. 114, 123, 60 L. Ed. 2d 755, 764, 99 S. Ct. 2198, 2203-04.) The court pointed out that under this provision of the statute, a potential offender can predict the consequences of his conduct: if convicted, he will sit in court and hear the police give their opinions of what the going illegal price is and he may cross-examine them and contribute his own opinion if he so chooses. (*People v. Dale* (1985), 137 Ill. App. 3d 101, 107, 484

N.E.2d 459.) To the extent that "street value" is a vague standard, we agree with the *Dale* court's conclusion that it is necessarily so based on the evil to which the statute is directed.

While we disagree with defendant's contention that the statute is unconstitutional, the statutory mandate was not complied with here, as noted previously. We therefore remand this case for the purpose of determining whether the trial court intended to fine defendant solely under section 5—9—1.1 or under both sections 5—9—1.1 and 5—9—1. Testimony as to street value in the hearing on remand should be pertinent to the actual substance seized in the present case as mandated by the statute. The bail deposit made by defendant is to be applied to payment of any fine levied against defendant consistent with the bail bond agreement. See *People v. Dale* (1985), 135 Ill. App. 3d 15, 17, 481 N.E.2d 821; Ill. Rev. Stat. 1985, ch. 38, par. 110—7(h).

For the reasons stated above, defendant's conviction is affirmed and the case is remanded.

Affirmed in part; reversed and remanded in part with directions.

QUINLAN and MANNING, JJ., concur.