THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC WILLIAMS, Defendant-Appellant.

First District (1st Division)   No. 1—86—3017

Opinion filed February 27, 1989.

Randolph Stone, Public Defender, of Chicago (Janet Stewart, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Joseph G. Howard, and Jerry D. Bischoff, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

On March 23, 1984, the defendant, Eric Williams, was charged with robbery, home invasion, aggravated battery, and unlawful restraint. Prior to trial, the charge of unlawful restraint was entered as *nolle prosequi*. The defendant was tried before a jury in the circuit court of Cook County, and on June 11, 1986, the jury found him guilty of the charges of robbery, home invasion, and aggravated battery. Judgment was entered on the jury verdict, and the aggravated battery and robbery convictions were merged into the home invasion conviction. The trial judge then sentenced the defendant to 11 years' incarceration for home invasion. The defendant appeals his convictions and his sentence.

The facts of the case, presented at trial, are as follows. On the evening of February 21, 1984, the victim, James Smith, a retiree who was approximately 70 years old, testified that he went to a tavern, had a shot and a beer, socialized with some other retirees, and then returned home to his apartment at 4659 South Drexel in Chicago, Illinois. When he arrived at his apartment, he unlocked the gates in front of his door and closed the gates, but apparently forgot to relock the gates. At approximately 10 p.m., Smith was watching television in the living room of his apartment, when the front door to his apartment was kicked open. Smith testified that two men burst into his apartment and that he recognized the two men as men who had recently moved into his apartment building. He stated that he had seen both men every day for approximately two months prior to that date. In court, he identified one of the men as the defendant,

Eric Williams, and explained that the defendant lived in an apartment on his floor with a woman, Beatrice Topps. He said that the other man, later identified as Selby, also lived in his building, but on a different floor.

Smith testified that after the two men broke in, he reached for a knife on his table, but the defendant kicked it away. At that point, the defendant and Selby threw him to the floor and attempted to cover his face. The two then stripped Smith and tied him up with a telephone cord. The defendant was, he stated, physically more aggressive towards him than Selby. Smith said that the defendant then went through his pockets, took his wallet, $90 in cash, and his credit cards. Both men, he stated, had guns which they held to his head, and the defendant told Smith that he would blow his head off if he screamed. Both men searched the apartment for about 15 minutes, and then left, while Smith remained tied up on the floor.

Approximately 15 minutes after the defendant and Selby left Smith's apartment, they returned. Upon their return, they carried Smith to his bedroom, tied him to his bed, and gagged him. Again they threatened to blow his head off if he made any commotion. They searched the apartment a second time for about 15 minutes and then left the apartment, leaving Smith tied to the bed and gagged. Sometime later, Smith stated, they returned a third time and, at that time, he believed they stole his television. The men again left, and Smith remained tied to the bed and gagged. Smith was subsequently discovered at approximately 11 a.m. the next day when a neighbor heard Smith, who had, by this time, gotten the gag out of his mouth, yelling for help. The police were called and Smith was released.

While the police were preparing to take Smith to the hospital, Smith received a phone call from an employee of a Carson Pirie Scott store who asked Smith if he had given anyone authority to use his credit cards. Smith told the caller that the cards were stolen and told the police who had called. The police then took Smith to the hospital.

In addition to Smith's testimony, the State also presented the testimony of a Carson Pirie Scott employee, Ms. Gwendolyn Tiller, who worked in the store's Evergreen Park location. Ms. Tiller stated that on February 22, 1984, she was notified that the defendant was trying to use a stolen Visa credit card in the name of James Smith. She said that when she questioned the defendant, he told her that he was James Smith and that he lived at 4851 South Champlain. The man also agreed to accompany her to the store office. She then con-

fiscated Smith's Visa card, and although the man had said he would go with her to the office, he gave his keys to the woman who was with him and ran out of the store. Tiller and another security guard chased after him as he ran out of the store and down the street. An Evergreen Park police officer, John Eisenbis, who was on the street, saw the chase and ultimately apprehended the defendant. After Officer Eisenbis took the defendant into custody, Tiller returned to the store and found the woman, Beatrice Topps, who had been with the defendant.

Officer Eisenbis testified that, following the arrest of the defendant, he took the defendant to the Evergreen Park police station. He stated that when he arrested the defendant, he found Smith's health insurance card and Smith's calling card in defendant's possession.

Thereafter, Officer Rubin Garza of the Chicago police department, who had been at the Smith robbery scene, arrived at the Evergreen Park station and transported the defendant to a Chicago police station for processing. A Chicago police department detective, John Garrity, testified that the defendant told him that he, along with Glen Selby and Selby's girlfriend, had broken into Smith's apartment, tied Smith up, searched Smith's apartment for money, and taken Smith's credit cards.

After the presentation of this evidence, the defendant took the stand and testified that he lived with Beatrice Topps and their two children on the same floor as Smith in the apartment building at 4659 South Drexel in Chicago. He also testified that he saw Smith on February 21, 1984, sometime before noon, but that he never went into Smith's apartment. He testified further that between the hours of 7 p.m. and 11 p.m. on that same day, February 21, 1984, he was inside his apartment at 4659 South Drexel. He said that he had Smith's credit cards when he was arrested because he had bought the credit cards from Selby, an acquaintance, in exchange for $10 and Selby's agreement to forgive a $45 debt which the defendant owed Selby. The defendant admitted that he knew the cards were stolen, but he denied any involvement in the Smith robbery. He further denied that he told Detective Garrity or an assistant State's Attorney, Gloria Coco, that he had participated in the offense. Finally, he claimed that he had not given an incorrect address to either Ms. Tiller or Officer Garza.

The State presented the rebuttal testimony of Officer Garza and Ms. Tiller, both of whom stated that the defendant had given them the incorrect address of 4851 South Champlain. The State also called Assistant State's Attorney Gloria Coco in rebuttal, and she testified

that when she spoke to the defendant on February 22, 1984, he told her that he had gone into Smith's apartment because the door was left open, but asserted that he had done no harm inside. Finally, the State called Detective Carl Silvestrini of the Chicago police department in rebuttal. Detective Silvestrini stated that he and Detective Garrity talked to the defendant in the Chicago police station on the evening of February 22, 1984, and that the defendant had told him that he and certain other people had gone into Smith's apartment while Smith was asleep, that Smith woke up, and that they tied him up and took his credit cards.

Defense counsel sought to have the defendant testify in surrebuttal, but the court refused to allow his testimony. At the close of all the evidence, the jury, as stated above, found the defendant guilty of robbery, home invasion, and aggravated battery, and the court then entered judgment on the verdict. The defendant's counsel, thereafter, orally moved for a new trial, claiming that the evidence concerning the identification of the defendant was insufficient. The State objected to the motion and the oral presentation. The trial court denied the oral motion and asked counsel to file a written motion. However, defense counsel never filed a written motion for a new trial, despite the trial court's request. Following a sentencing hearing, the trial judge, as stated earlier, imposed a sentence of 11 years' imprisonment.

Defendant raises six issues on appeal: (1) whether the defendant received ineffective assistance of counsel because of defense counsel's improper actions; (2) whether the trial court erred when it allowed the State's jury instruction that referred to the defendant's involvement in the separate offense concerning the use of Smith's stolen credit cards; (3) whether the trial court denied the defendant the right to present a defense when it limited his cross-examination and refused to allow the defendant to present surrebuttal testimony; (4) whether the defendant's 11-year sentence was excessive under the circumstances here; (5) whether the defendant's 11-year sentence was grossly disparate in comparison to Selby's six-year sentence; and (6) whether the trial court erred in ordering the defendant to pay restitution without first determining his ability to pay.

The first argument of the defendant on appeal is that he received ineffective assistance of counsel. The defendant contends that he received ineffective assistance when his counsel failed to file a written motion for a new trial and when his counsel implied, in closing argument, that defendant was a "no good fellow" because he had bought stolen credit cards and attempted to use them. The State, on the

other hand, contends that the defendant received effective assistance of counsel because the failure to file the written post-trial motion was not prejudicial to the defendant and the decision by defense counsel to admit to defendant's purchase and use of the stolen cards was a matter of trial strategy, and, as such, cannot form the basis for a claim of ineffective assistance of counsel.

■ The United States Supreme court established a two-prong analysis for determining whether a defendant received ineffective assistance of counsel in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and Illinois specifically adopted that analysis in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. Under the two-prong test, a finding that a defendant received ineffective assistance of counsel is warranted only if the defendant can show: (1) that representation fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the alleged deficiency prejudiced the defense in the sense that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 698, 104 S. Ct. at 2064; *People v. Ashford* (1988), 121 Ill. 2d 55, 73-74, 520 N.E.2d 332, 339.) Underlying this two-prong analysis is the strong presumption that the attorney's performance normally falls within the wide range of reasonable professional assistance. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *Albanese*, 104 Ill. 2d at 526, 473 N.E.2d at 1255.) Accordingly then, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Ashford*, 121 Ill. 2d at 74, 520 N.E.2d at 339, quoting *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065; see also *People v. Shum* (1988), 117 Ill. 2d 317, 370, 512 N.E.2d 1183, 1205; *People v. Moore* (1984), 178 Ill. App. 3d 531, 538-39.

This specific issue of whether defense counsel's failure to file a written motion for a new trial, in light of the requirement that issues be preserved for review by a trial objection and a specific objection in a written post-trial motion, constituted ineffective assistance of counsel was addressed in the case of *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124. The court in *Enoch* found that in such circumstances, courts must first determine if a showing of actual prejudice to the defendant has been made, *i.e.*, whether the second prong of the *Strickland* test has been met. (*Enoch*, 122 Ill. 2d at 201-02, 522 N.E.2d at 1137.) The *Enoch* court found that where the defendant could not show that but for the failure to file the motion, he

would not have been convicted, the claim of ineffective assistance of counsel for failure to file a written post-trial motion must fail. In *Enoch*, the court, in its analysis of prejudice to the defendant, noted that there the evidence of the defendant's guilt was overwhelming. *Enoch*, 122 Ill. 2d at 202, 522 N.E.2d at 1137.

■ Here, too, the defendant cannot show actual prejudice by defense counsel's failure to file a written motion for a new trial, and, accordingly, he cannot meet the second prong of the *Strickland* test. The defendant has not shown, and, indeed, has not even made any argument, that if a written post-trial motion had been filed, he would not have been convicted. In this case, as in *Enoch*, there was also overwhelming evidence of the defendant's guilt, including a positive identification of the defendant by the victim, Smith. Thus, the defendant was not prejudiced by his counsel's failure to file a written post-trial motion.

■ The defendant's second basis for his claim of ineffective assistance of counsel is based on his counsel's statements made in closing argument. The defendant, however, has failed to overcome the strong presumption that these alleged errors might have been considered sound trial strategy. The statements made by defense counsel in closing argument were clearly based on the defense strategy. The portrayal of the defendant in closing argument as one who had committed another, less serious offense, *i.e.*, the purchase and use of the stolen credit cards, was the foundation of the defense theory that the defendant did not take part in Smith's robbery. Accordingly, then, the defendant's ineffectiveness claim must fail since such a claim cannot be based upon alleged errors in trial strategy. Moreover, even if defense counsel's actions were not found to be a matter of trial strategy, the defendant, nevertheless, has not met his burden under either prong of the *Strickland* test. The defendant does not even make an argument concerning how counsel's actions fell below an objective standard of reasonableness. As noted above, the defendant also cannot demonstrate that the outcome of the trial would have been different had counsel not acted as he did. Therefore, defendant's ineffectiveness claim must fail under both prongs of the test.

■ The next issue defendant raises for review is whether the trial court erred when it allowed the State's jury instruction that referred to the defendant's involvement in the separate offense of allegedly buying and using stolen credit cards. The instruction at issue read as follows:

> "Evidence has been received that the defendant has been involved in an offense other than the charge in this indictment.

This evidence has been received solely on the issue of the defendant's identification. This evidence may be considered by you only for the limited purpose for which it was received."

Defense counsel argues on appeal that this instruction was prejudicial to the defendant's case, because the defendant was not charged or convicted in connection with the other offense and the instruction itself was misleading and confusing to the jury. On the contrary, the State argues first that the defendant waived this issue by failing to specify it in a written motion for a new trial. Second, the State contends, even if this issue was not waived, the instruction was proper because the evidence of the other offense could properly be considered by the jury for the limited purpose of identification and for explanation of the circumstances of defendant's arrest. Finally, the State argues, even if we were to find that the instruction was improper, any resulting error was, nevertheless, harmless.

Initially, we note that our supreme court's recent decision in *Enoch* has held that, in order to preserve an issue for review, a party must raise the objection at trial and also specify the objection in a written post-trial motion. (*Enoch*, 122 Ill. 2d at 187-88, 552 N.E.2d at 1129-30.) Clearly there was a failure to comply with our supreme court's mandate in *Enoch* when defense counsel here failed to file a written post-trial motion preserving his specific objections. Defense counsel's generalized oral motion for a new trial did not obviate the requirement of a written post-trial motion alleging specific errors. Here, the State expressly responded to the oral motion of defense counsel, arguing that, first, the oral motion was not based upon specific errors at trial; second, the State was not prepared to argue the merits of the motion since there was no prior notice that the defense was going to bring the motion; and third, the State in fact stated, at that time, that it was not waiving the requirement of a written motion. The trial court specifically told defense counsel to file a written motion within a few days because it found the defendant's oral motion to be both improper and vague. Although defense counsel promised the trial court that he would supplement his oral request in writing, no such written motion was ever filed. Accordingly, defense counsel has waived any objections it may have had to this instruction. See *Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.

Even if we were to find that this issue was not waived by the defense, the trial court, nonetheless, properly allowed the instruction on other crimes because the instruction stated that the evidence of another offense was only to be considered for the limited purpose of identification. In Illinois, while collateral evidence of other crimes is

generally inadmissible, it may be admissible to show *modus operandi*, knowledge, design, intent, motive, plan, absence of malice or identification. (*People v. Adams* (1985), 109 Ill. 2d 102, 485 N.E.2d 339.) The evidence here of the other offense, which was admitted by the defendant without objection, was properly admitted at trial for the limited purpose of identification, and the instruction appropriately and clearly limited the jury's consideration of that evidence.

The defendant, moreover, has not shown how he was prejudiced by the giving of this instruction. The entire theory of the defense at trial was based upon the defendant's admitted involvement in the other offense. The defendant admitted he had purchased and used the stolen credit cards, but asserted that he had not participated in the Smith robbery. Thus, even if the defendant had not waived any objection to the giving of this instruction, it was, in any event, entirely proper under the circumstances.

The third contention of the defendant is that he was denied the opportunity to present a defense when the trial court limited defense counsel's cross-examination and refused to allow defendant's surrebuttal testimony. The defendant argues that the trial court erred first when it prohibited defense counsel from questioning Detective Garrity on Selby's height. He claims that this evidence was necessary and relevant to the defendant's case because it tended to establish an alleged flaw in Smith's testimony. Smith had testified that Selby was 5 feet 6 inches to 5 feet 8 inches tall, but the defendant testified that Selby was 6 feet 1 inch to 6 feet 2 inches tall. Apparently the defendant argues that this alleged flaw discredited Smith's identification of the defendant since Smith did not correctly state Selby's height, and, hence, Smith actually misidentified both of the men. The defendant also contends that the trial court improperly refused to allow him to testify in surrebuttal to the State's rebuttal testimony where he could have denied the State's testimony presented in rebuttal. The State, on the other hand, asserts that both of these issues were waived and, if not waived, the State then argues, alternatively, that the evidence sought to be presented was either irrelevant or already admitted into evidence.

■ Here again, the defendant failed to raise this claim in a written post-trial motion, as required in *Enoch*. (*Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) But, even if we were to conclude that the defendant had not waived these errors, a review of the trial court's rulings concerning the limitation of defendant's cross-examination and surrebuttal evidence shows that these rulings were proper. A trial court's rulings on limiting cross-examination and rebuttal testimony will only

be overturned if the trial court abused its discretion and that abuse resulted in manifest prejudice to the defendant. (*People v. Brisbon* (1985), 106 Ill. 2d 342, 362, 478 N.E.2d 402, 411; *People v. Williams* (1985), 131 Ill. App. 3d 597, 475 N.E.2d 1082.) In this case, we find that the trial court did not abuse its discretion.

First, it is unclear how the height of Selby is relevant to Smith's alleged misidentification of the defendant. Smith identified the defendant in court, and Smith referred to Selby as the shorter of the two men, which defendant's own testimony established was correct (defendant testified that he was 6 feet 6 inches tall and that Selby was 6 feet 1 inch to 6 feet 2 inches tall). Additionally, the defendant fails to note that Officer Garza also testified that Selby was 5 feet 8 inches tall, and, hence, made the same error as Smith. Second, although defendant contends that he was not permitted to properly cross-examine Detective Garrity, the record shows that he had a sufficient opportunity to cross-examine Detective Garrity. Detective Garrity in fact stated that Selby was 6 feet tall. Consequently, all of the evidence which defendant contends was needed to support his theory of misidentification based on Selby's height was before the jury.

■ It was also within the court's discretion to refuse to allow surrebuttal testimony, if no new matters were raised in rebuttal. (See *People v. Sanders* (1986), 143 Ill. App. 3d 402, 493 N.E.2d 1; *People v. Geitz* (1985), 138 Ill. App. 3d 670, 485 N.E.2d 1349.) Here, the defendant testified on direct examination that he lived at 4659 South Drexel, and on cross-examination, testified that he never told Ms. Tiller or Officer Garza that he lived at 4851 South Champlain. Defendant also denied telling Assistant State's Attorney Gloria Coco and Detective Garrity that he had participated in the robbery. The State then called Ms. Tiller and Officer Garza in rebuttal, and they both testified that the defendant told them that he lived at 4851 South Champlain. The State also called Detective Silvestrini, who had interviewed the defendant with Detective Garrity, and Ms. Coco, the assistant State's Attorney, and they both testified on rebuttal that the defendant had admitted some level of participation in the crime.

After all of this rebuttal testimony, defense counsel asked the court to allow the defendant to testify in surrebuttal, apparently in order to deny what the rebuttal witnesses had said. In these circumstances, we find that the trial court properly refused to allow the surrebuttal testimony. Rebuttal evidence limited to contradicting the defendant's prior testimony does not raise new matters. The defendant, therefore, could not have testified as to any new matters, and,

thus, surrebuttal was not warranted, and the trial court, accordingly, did not abuse its discretion by denying surrebuttal testimony.

The fourth issue argued by the defendant is that his 11-year sentence was excessive. He contends that the sentence was excessive because he had no prior convictions and he was only 24 years old. The State, however, again argues that the defendant waived his right to contest the sentence by his counsel's failure to object during the sentencing hearing or in a post-trial motion. Alternatively, the State submits that the sentence was proper, well within the statutory range, and that the facts of the case here supported it.

■ A trial judge is accorded wide discretion in sentencing. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344, 348-49; *People v. Burke* (1987), 164 Ill. App. 3d 889, 900-01, 518 N.E.2d 372, 379-80.) In this case, the defendant was sentenced for the crime of home invasion, a Class X felony, which carries a statutory term of not less than six and not more than 30 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(3).) We agree with the State's contention, and find that any objections to the sentence were waived. Defense counsel did not object to the sentence at the time of the sentencing hearing, nor did he file a subsequent motion contesting the sentence. But, even assuming that there was no waiver, our determination would be the same, since the defendant has not shown how the trial judge abused his discretion. The trial judge here properly considered all factors in aggravation and mitigation, and the sentence imposed was within the statutory range and well under the maximum. Consequently, we cannot say that the sentence imposed was improper.

■ The defendant next asserts that his sentence was grossly disparate to that of the codefendant, Selby, who pleaded guilty and received a six-year sentence. He argues that he improperly received a greater sentence because he requested a jury trial. The State again argues that the defendant waived this issue and, even if he had not, an 11-year sentence was entirely proper.

Our supreme court in *People v. Ashford* said: " 'The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences.' " (*Ashford*, 121 Ill. 2d at 88, 520 N.E.2d at 346, quoting *Williams v. Illinois* (1970), 399 U.S. 235, 243, 26 L. Ed. 2d 586, 594, 90 S. Ct. 2018, 2023.) Disparity between the sentences of equally culpable defendants is entirely proper where it is warranted by differences in the nature and extent of each defendant's participation in the crime. See *Ashford*, 121 Ill. 2d at 88, 520 N.E.2d at 346; *People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434

N.E.2d 1121, 1126.

Here, the disparity between the sentences of the defendant and Selby was only five years, and that disparity can clearly be attributed to the defendant's more extensive participation in the crime. Smith testified that the defendant was the one who was more aggressive in the robbery, that the defendant was the one who went through Smith's pockets and his wallet, and that the defendant was the first to threaten to blow Smith's head off. Finally, the evidence established that it was the defendant who had the stolen credit cards in his possession and tried to use them. Thus, the disparity between Selby's and the defendant's sentences was supported by the evidence and we, therefore, find that no abuse of discretion occurred here.

■ The final issue raised for our review is whether the trial court erred when it ordered the defendant to pay $90 restitution without first inquiring as to whether he was financially able to pay. The defendant argues that the court should have made a determination as to whether he was able to pay before it ordered him to make restitution of $90. The State claims that the defendant waived this issue. This court has recently interpreted section 5—9—1 of the Unified Code of Corrections, which governs impositions of fines, and held that before imposition of such a fine, the trial court must hold a hearing and make a determination that the defendant is financially able to pay. (See Ill. Rev. Stat. 1987, ch. 38, par. 1005—9—1(d); *People v. Carrasquilla* (1988), 167 Ill. App. 3d 1069, 1075, 522 N.E.2d 139, 142.) Since there was no hearing or determination below, we find that the case must be remanded for a hearing and subsequent determination of the defendant's ability to pay restitution. If the court, after the hearing, determines that the defendant is able to pay the $90, the court may then properly order the defendant to pay restitution in that amount.

Judgment affirmed in part; reversed in part and remanded with directions.

BUCKLEY and O'CONNOR, JJ., concur.