THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DUNCAN WESTFIELD, Defendant-Appellant.

First District (6th Division)   No. 1—89—0793

Opinion filed December 21, 1990.

Randolph N. Stone, Public Defender, of Chicago (Kyle Wesendorf, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David R. Butzen, and Michele I. Lavin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a bench trial, defendant Duncan Westfield was found guilty of criminal sexual assault, criminal sexual abuse and unlawful restraint, with the two lesser charges merging into the criminal sexual assault charges. Defendant was sentenced to five years' imprisonment. The issues raised on appeal are whether defendant was proved guilty beyond a reasonable doubt and whether the trial court imposed the burden of proof on defendant.

The evidence presented at trial established that about 11 p.m. on

June 26, 1988, complainant, a 34-year-old homeless woman, went to Lincoln Park in Chicago. As she sat down on a seat near the statue of Abraham Lincoln, she saw defendant nearby holding a bottle in his hand. When he started to talk to her, complainant told him to go away. She then noticed that defendant's pants were open. At this point defendant tried to drag complainant behind the statue. She resisted, he ran away and she returned to the seats near the statue. About 20 to 30 minutes later complainant started to walk away from the statue when she again saw defendant standing by the bushes down around the statue. As complainant started to run away, she tripped and fell and defendant caught her. The two struggled and defendant held her down with one hand while he touched her vaginal area with the other hand. When complainant started to scream, defendant put one hand over her mouth. He then pulled down her pants and "started putting his fist back and forth up in my [complainant's] vagina." As complainant continued to struggle with defendant, she grabbed a chain from his neck, which she later gave to the police when she was taken to the station. Complainant testified that sometime during the struggle two men, who complainant "figured" were policemen, came up to them and told defendant to leave complainant alone, at which point defendant fled from the scene. Complainant told the two men that defendant had raped her. Another officer then arrived in a car, and he said that he was going to go after defendant and that complainant should wait. A while later the police returned with defendant, whom complainant identified as her assailant. Complainant stated that at the time of the incident she was on the second or third day of her period and she was still bleeding.

Police officer James Boyle testified that he was off duty and driving in the vicinity of the park when he heard a woman scream for help. He entered the park in his car and drove with the headlights turned on until he saw defendant and complainant "tussling" on the ground. When the officer came within about 75 feet of them, defendant began to run away and complainant followed after him, telling him to stop. The officer followed alongside complainant, keeping defendant in sight. The officer testified that when he asked complainant what happened, she replied, "[H]e hurt me, please help me, stop him." The officer followed defendant through the park until defendant eventually responded to the officer's order to stop. Shortly thereafter other officers arrived in a squadrol and defendant was placed inside. Complainant was then taken to the squadrol, where she identified defendant as her assailant. Officer Boyle then retraced the path he observed defendant run in search of a shirt he saw defendant discard

while being pursued by the officer. The officer testified that when he found the shirt, it appeared to have a dark brown "mucous type fluid" which he thought was "clotted blood, and that the fluid was moist." The officer further testified that when he went to retrieve the shirt, he heard two men speaking from behind some nearby bushes. When the officer asked who they were, one of the men stated that they had given that information to another police officer. After the officer returned to the police station, he interviewed complainant, during which she gave him a gold chain and hat she had taken from her assailant. When the officer placed the shirt, hat and chain on a table near the cell in which defendant was placed, defendant volunteered that those items belonged to him.

Police officer Daniel Healy testified that after defendant was in custody at the police station and had been advised of his rights, defendant said, "I am not a rapist." Defendant had not yet been advised of the charges against him.

Defendant testified that he was 26 years old and worked for the Chicago Park District as a landscape maintenance laborer. He stated that about 11 p.m. on the date of the incident he went to a restaurant in the Lincoln Park area to visit a friend who worked there, but upon learning that his friend had already left, defendant went to a nearby store and purchased a bottle of wine. He then went to the park near the statue of Lincoln, where he saw complainant, whom he asked what she was doing in the park at that time of night. After complainant mumbled something, defendant told complainant that he was trying to be nice to her, and she responded by cursing at him. Defendant stated that he was about to go home, but his conscience bothered him so he decided to give complainant some money for food. As he tried to hand her the money, complainant snatched a chain he was wearing around his neck and ran. Defendant followed after her, and they both fell to the ground. Complainant started yelling for help, and defendant heard a man's voice from some nearby trees tell defendant to let go of her. Defendant then saw a car enter the park. When the man in the car approached defendant, he thought that the man was a detective. According to defendant, he knew that he was going to be searched so he panicked, because he had a "reefer" in his pocket, and ran around the statue, took the "reefer" out of his pocket and took off his sweatshirt in order to give his pursuer a decoy. Defendant testified that he never sexually assaulted complainant and he never removed or pulled down her pants.

Lydine Holloman testified that she became acquainted with defendant several years earlier as an employee with the Chicago Park

District, and that she saw him on a daily basis. She stated that defendant was "one of the best young men [she] worked with during [her] years with the park district." She also testified that he was an honest and nonviolent person.

Nettie Mae Carter also testified as a character witness. Carter is affiliated with the church defendant attends and has known him since he was six years old. She stated that his reputation for being honest and nonviolent was excellent.

Police officer Ralph Sikorski testified that when he interviewed defendant at the police station, he asked defendant how complainant got his chain, and defendant responded that he did not know. The officer also stated that defendant never told the officer that complainant took a chain from his neck.

The parties entered into a stipulation concerning the testing of blood found on defendant's clothing and the blood type of defendant and complainant. Defendant had type A blood and complainant had type O blood. It was also determined that the stains on defendant's shirt were bloodstains. The stipulation provided that although the bloodstains were most likely type A blood, it was also stipulated that the possibility could not be ruled out that it was type O blood or a combination of type A and type O.

In finding defendant guilty the trial court stated as follows:

"The court has heard the conflicting testimony of both the victim and the defendant. There has been no explanation offered to the Court as to why the pants of Mr. Westfield [defendant] were unzipped as corroborated by Officer Boyle who happened upon the scene. The defendant testified himself he had no idea as to why there was blood, be it the victim's or his, on his sweatshirt, and there has been no explanation as to why, after having agreed, according to the detective, to answer questions in the police station, that there was no mention made of the victim snatching chains from Mr. Westfield's [defendant's] neck.

While the Court is cognizant of evidence showing the defendant to be a person presumably of good moral character prior to this incident and being a person who had a reputation for being honest and trustworthy and non-violent, the Court nonetheless, having considered all the evidence, is persuaded that the victim here is, to be believed, that her story was credible and corroborated, and the Court believes sufficient to warrant a finding of guilty as to the three charges that are before the Court."

■ Defendant first contends that the evidence was insufficient to establish guilt, arguing that because it is a sexual assault case complainant's testimony must be clear and convincing or it must be corroborated. We disagree. Recently, in *People v. Roy* (1990), 201 Ill. App. 3d 166, 185, 558 N.E.2d 1208, the court stated:

"[T]here is no additional requirement that in a case in which a sex offense is charged the State must, in addition to proving the defendant guilty beyond a reasonable doubt, demonstrate either the evidence is substantially corroborated or the victim's testimony is clear and convincing. The testimony of no other category of crime victim is held to be automatically suspect or to require additional proof beyond the statutory requirements."

We adhere to the view expressed in *Roy* and review the evidence in this case accordingly. *People v. Evans* (1990), 199 Ill. App. 3d 330, 335, 556 N.E.2d 904.

■ In determining whether the evidence was sufficient to support defendant's conviction, we are guided by the general rule that a reviewing court will not reverse a conviction unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of guilt. (*People v. Young* (1989), 128 Ill. 2d 1, 51, 538 N.E.2d 461.) This reasonable doubt test should be applied in reviewing the sufficiency of evidence in all criminal cases. *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344.

■ Viewing the evidence in the light most favorable to the prosecution (*People v. Pintos*, 133 Ill. 2d 286), cognizant that conflicting testimony is to be resolved by the trier of fact (see *People v. Murray* (1989), 188 Ill. App. 3d 488, 544 N.E.2d 1008), we find that the State's evidence was not so unsatisfactory as to raise a reasonable doubt of defendant's guilt. Complainant testified that when defendant first approached her, she observed that his pants were unzipped. The next time he approached, she attempted to flee, but tripped and fell. Defendant caught complainant, put his hands over her mouth, pulled down her pants and put his fist "back and forth" in her vagina. Complainant stated that she had her period at the time. Officer Boyle testified that he saw complainant and defendant "tussling" on the ground, but that as he approached them, defendant got up and ran. When he finally apprehended defendant, he observed that defendant's pants were unzipped. A chemical analysis of stains on defendant's shirt established that the stains were blood, and although the blood was most likely defendant's blood type, it could not be ruled out that the blood type could have been that of complainant or of both defendant and complainant. The evidence was sufficient for the trial court to

find defendant guilty beyond a reasonable doubt.

Defendant next contends that he is entitled to a new trial because the trial court's statement made before entering a finding of guilty indicates that the court imposed the burden of proof on defendant. Defendant cites the following statement of the court to support his claim:

> "There has been no explanation offered to the Court as to why the pants of Mr. Westfield were unzipped as corroborated by Officer Boyle who happened upon the scene. The defendant testified himself he had no idea as to why there was blood be it the victim's or his, on his sweatshirt, and there has been no explanation as to why, after having agreed, according to the detective, to answer questions in the police station, that there was no mention made of the victim snatching chains from Mr. Westfield's neck."

Before addressing the merits of defendant's claim, we note the State's comment that defendant waived the issue by failing to raise it at trial or in a post-trial motion. Because of the fundamental importance of a fair trial and the practical difficulties in objecting to the conduct of the trial court, the waiver rule is applied less rigidly when the judge's conduct is the basis of objection. (*People v. Barrow* (1989), 133 Ill. 2d 226, 260, 549 N.E.2d 240; *People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 1028, 516 N.E.2d 382.) Therefore, we will address the merits of defendant's claim.

In order for the comments by a judge to constitute reversible error, the defendant must show that the remarks were prejudicial and that he was harmed by them. (*People v. Freeman* (1989), 182 Ill. App. 3d 731, 734, 538 N.E.2d 681 (jury trial); *People v. Carrasquilla* (1988), 167 Ill. App. 3d 1069, 1079, 522 N.E.2d 139 (bench trial).) We do not find that the comments challenged by defendant in the instant case were either prejudicial or harmful to defendant. After reviewing the entire record, we hold that the trial court based its finding of guilt on the evidence presented by the State and not, as defendant contends, on the basis of defendant's failure to present certain evidence. While defendant accurately quoted the court's comments regarding defendant's failure to explain certain matters, he neglected to quote the comments that followed wherein the court stated:

> "Having considered all the evidence, [the court] is persuaded that the victim here is to be believed, that her story is credible and corroborated, and the Court believes sufficient to warrant a finding of guilty as to the three charges that are before the Court."

In a bench trial, it is the function of the trial court to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Colson* (1989), 187 Ill. App. 3d 423, 432, 543 N.E.2d 282.) The trial court's comments in the instant case indicate that the court properly performed these functions and based its finding of guilt on the evidence presented by the State. Consequently, we conclude that the challenged comments made by the court did not constitute reversible error so as to award defendant a new trial.

For the reasons stated above, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and EGAN, JJ., concur.