THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT W. KIRKPATRICK, Defendant-Appellant.

Fourth District No. 4—94—0032

Opinion filed May 11, 1995.

Daniel D. Yuhas and Janieen R. Tarrance, both of State Appellate Defender's Office, of Springfield, for appellant.

John B. Huschen, State's Attorney, of Eureka (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1993, a jury convicted defendant, Robert W. Kirkpatrick, of battery (720 ILCS 5/12—3(a) (West 1992)), and the trial court later sentenced him to probation for 24 months, subject to various conditions. Defendant appeals, arguing that (1) the State violated his right to due process by failing to disclose exculpatory evidence in its possession; (2) the trial court improperly limited his testimony; (3) the prosecutor's improper closing argument deprived him of fair trial; (4) he received ineffective assistance of counsel; and (5) the trial court's restitution order was defective.

We disagree with each of these arguments and affirm.

## I. BACKGROUND

Defendant's conviction arose out of an altercation between two groups of young men in May 1993. In brief, an argument between these two groups led to physical confrontations and ultimately to the claim by Gerald Rodriguez that defendant struck him with a knife, causing various minor cuts. According to Rodriguez, defendant escalated the argument into a fight by swinging his fists at Rodriguez. Rodriguez fought back, claiming that he did so only to protect himself. Rodriguez and the other State's witnesses claimed that Rodriguez had nothing in his hands during the fight.

Defendant's version of events, substantially corroborated by defense witnesses, was that Rodriguez was the aggressor and defendant acted in self-defense. Defendant admitted using a knife to do so, but he claimed that Rodriguez had something in his hand, as well. Defendant thought it was a hammer because, when Rodriguez hit him, the power of the blow was heavier than that of a fist, and defendant claimed it knocked him "about half senseless." No defense witness testified that Rodriguez possessed a hammer during his fight with defendant, but one defense witness believed that Rodriguez held a stick in his hand. Deputy sheriffs arrived shortly after the fight ended, and one deputy testified that defendant told him at the scene that no weapons were involved in the altercation.

## II. ANALYSIS

A. *Defendant's Claim That the State Violated Defendant's Right to Due Process by Failing To Disclose Exculpatory Evidence*

Defendant asserts that whether Rodriguez was armed with a hammer during the fight constituted a crucial fact in view of defendant's claim that he justifiably used a knife to defend himself against Rodriguez. At trial, defendant claimed that Rodriguez struck him with a hammer, while Rodriguez asserted that he did not have anything in his hands. Further, the prosecutor in closing argument stated that a hammer was never found. Defendant claims, however, that the State in fact had possession of the hammer at issue, both before and during trial; accordingly, its failure to disclose the existence of this hammer to defendant deprived him of due process because the hammer constituted exculpatory evidence. In sum, defendant claims that the State violated the constitutional command of the United States Supreme Court in *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, which held that the due process clause of the Federal constitution requires the State to turn exculpatory evidence over to defendant.

The first problem with defendant's argument arises from the insufficiency of the record defendant, as appellant, has provided of the trial court proceedings. The *only* references in this record appear in two places: (1) one paragraph (of defendant's two-paragraph) motion for new trial, which states the following: "[t]hat the Defendant has reason to believe that the *** Sheriff's Department may have evidence in its possession which is exculpatory to the Defendant, but that the same was not revealed to the Defendant or his attorney"; and (2) a "stipulated statement of facts," recently added as a supplement to the record, which states the following:

"5. The State, represented by [the State's Attorney], orally moved the court to deny the motion for new trial on the grounds that:

*** 

(b) the defendant and his attorney knew or should have known about the exculpatory evidence, *i.e.*, the hammer, because the defendant or his girlfriend, Vanessa Finney, gave the hammer to the *** Sheriff's Department two days after the defendant's arrest; thus, the defendant was not subject to surprise.

6. The court denied the motion for new trial holding that the defendant knew or should have known about the exculpatory evidence."

This record contains no information regarding any of the follow-

ing: (1) to whom in the sheriff's department did Finney give the hammer; (2) what explanation (if any) did she provide to that person regarding the hammer; (3) what, if anything, was that person's response to Finney; (4) did that person know, or have any reason to believe, that the hammer possessed any significance regarding the charge against defendant; and (5) did that person ever speak to the State's Attorney about the hammer or that person's conversation with Finney?

On this same subject, we also note the following: (1) Finney testified at trial and made no mention whatsoever of the hammer; (2) defendant testified at trial that some children found a hammer the morning after the altercation and told Finney about it; and (3) until defendant testified that he believed Rodriguez held a hammer during their altercation, this record contains no indication that the prosecutor or any law enforcement officer knew of defendant's claim that Rodriguez possessed the hammer. We note again that defendant's only statement to the police was that *no one* had a weapon during the fight.

The law is clear that the appellant bears the burden of presenting a record demonstrating the error complained of. (*Airtite v. DPR Limited Partnership* (1994), 265 Ill. App. 3d 214, 218, 638 N.E.2d 241, 243-44; *People v. Hood* (1994), 265 Ill. App. 3d 232, 239, 638 N.E.2d 264, 270.) Further, any doubts arising from an incomplete record will be decided against the appellant. *Ollivier v. Alden* (1994), 262 Ill. App. 3d 190, 198, 634 N.E.2d 418, 424.

●1 In the present case, the scant record before us does not support defendant's argument about the State's possession of the hammer. For all we can tell from this record, Finney may have provided no explanation to the personnel from the sheriff's department to whom she presented the hammer, and neither the prosecutor nor any law enforcement officer may have been aware of the significance defendant *first claimed at trial* that the hammer possessed. Indeed, this record suggests that the first time the State learned of the claimed significance of the hammer was when defendant so testified.

We agree with the court in *United States v. Moore* (7th Cir. 1994), 25 F.3d 563, 569, that the *Brady* rule, which prevents the State from suppressing exculpatory evidence, does not apply unless the prosecutor possessed some knowledge of the exculpatory material's existence or exculpatory nature. Where an item is not obviously exculpatory, *Brady* imposes no obligation upon the State to disclose the item absent some indication or knowledge of the item's exculpatory nature in the context of the particular case. Because the record before us fails to show any awareness of any State agent of the claimed signifi-

cance of the hammer—an item which is not obviously of an exculpatory nature—we hold that the State did not violate *Brady* by failing to disclose that it had the hammer in its possession. In view of this holding, we need not address the State's alternative argument that it did not violate the *Brady* rule because defendant knew or should have known about the existence of the allegedly exculpatory evidence.

### B. *The Trial Court's Restriction on Defendant's Testimony*

Defendant next argues that the trial court erred by not permitting him to testify in this self-defense case about both his state of mind and the allegedly violent disposition of Rodriguez. We disagree.

This issue arises in two contexts. The first occurred when the court sustained the State's objection and instructed the jury to disregard the following answer defendant gave on direct examination: "And then I asked, 'Where is Jim [(one of defendant's friends)]?' Because, well, I was just worried about him from past experiences myself." The second occurred on cross-examination when the State asked defendant if he went outside his residence to check for Jim and to check the cars, and defendant responded, "Yes, among other reasons ***." The State then asked if one of those reasons was to confront Rodriguez, and defendant responded as follows: "No. I also feared the fact that they had keys to the house." The prosecutor then asked the court to strike that last answer as not being responsive, and the court granted the request.

■ Based on these two occurrences, defendant argues on appeal that the trial court improperly prohibited him from appropriately presenting state-of-mind testimony in support of his self-defense claim. In making this argument, defendant concedes that he failed to challenge the court's rulings either when made or in his post-trial motion, and therefore he waived them unless the plain error rule applies. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Defendant asks this court to apply the plain error rule because he asserts the evidence in this case was closely balanced and the evidence in question might have affected the outcome of the case. We decline his invitation.

In our judgment, defendant's argument is "much ado about nothing." Indeed, the portion of defendant's testimony about "past experiences" that the court struck is entirely ambiguous and does not come close to discussing the allegedly violent disposition of Rodriguez. Further, defendant's second statement—that the court struck on cross-examination as nonresponsive—was in fact nonresponsive and constituted volunteered information. The court properly struck that

testimony (see *People v. Phillips* (1989), 186 Ill. App. 3d 668, 681, 542 N.E.2d 814, 822-23), and because the court's action in doing so was not error, it certainly cannot constitute plain error.

## C. *The Prosecutor's Allegedly Improper Closing Argument*

■ Defendant next claims that the prosecutor deprived him of a fair trial by making various improper comments during closing argument. Again, defendant asks this court to consider these matters as plain error because he failed both to object during trial and to include this issue in his post-trial motion. Again, we decline to do so. In our judgment, after carefully reviewing each of the alleged improprieties of the prosecutor's closing argument, none comes close to meeting the standard that its utterance " 'might have significantly affected the outcome of the case.' " *People v. Keefe* (1991), 209 Ill. App. 3d 744, 752, 567 N.E.2d 1052, 1057, quoting *People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241.

## D. *Effective Assistance of Counsel*

■ Defendant also argues that if this court does not find the alleged errors committed by the trial court and prosecutor constitute plain error, then we should conclude that defendant received ineffective assistance of counsel because of his trial counsel's failure to object when appropriate to preserve the issues on appeal. We emphatically disagree.

In the seminal case of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the United States Supreme Court held that a court must consider two separate prongs when evaluating a defendant's claim that he received ineffective assistance of counsel: (1) did trial counsel's action fall below an objective standard of reasonableness; and (2) does a reasonable probability exist that, but for trial counsel's unprofessional errors, the outcome at trial would have been different? In our judgment, neither of these prongs comes remotely close to applying to the record before us, and we express our disapproval of defendant's appellate counsel's using the claim of "ineffective assistance of counsel" as a sort of "catch-all" argument, to be routinely used if all else fails.

## E. *The Order of Restitution*

■ As a last matter, defendant argues that the trial court erred by ordering him to pay restitution of $215.50 without setting a time for payment as required by the restitution statute (730 ILCS 5/5—5—6(f) (West 1992)). However, the record contains no showing that defendant objected to the trial court's failure to set a time for payment either at the time the court imposed the restitution order or in

any subsequent motion contesting that order. Accordingly, we hold that he has waived this issue on appeal. (See *People v. Williams* (1989), 180 Ill. App. 3d 294, 305, 535 N.E.2d 993, 1000.) To hold otherwise would require this court on appeal to address and correct a matter which, if it were of any real import to defendant in the first place, could have been—and should have been—called to the attention of the trial court for easy corrective action at that level. Permitting defendants to raise this sort of issue for the first time on appeal squanders our scarce judicial resources and should not be permitted.

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

COOK and GREEN, JJ., concur.